Greenleaf Engineering & Construction Co. v. Teradyne, Inc.; Greenleaf Engineers, Inc.

GREENLEAF ENGINEERING & CONSTRUCTION COMPANY, INC.
*vs.* TERADYNE, INC.; GREENLEAF ENGINEERS, INC.
& another,[1] third-party defendants.

Norfolk. February 16, 1983. — March 31, 1983.

Present: BROWN, CUTTER, & KASS, JJ.

*Practice, Civil,* Appeal. *Corporation,* Corporate entity. *Arbitration,*
Parties, Consumer Protection Act. *Consumer Protection Act,* Arbitration.

The relationship among two corporations and the individual who was
president of both was not so close as to require one of the corporations,
in an action to recover on a construction contract which did not provide for arbitration, to submit its claim against the defendant to arbitration simply because the defendant had impleaded the second corporation as a third-party defendant on a claim arising out of a related
contract between the second corporation and the defendant and there
was a clause providing for arbitration in that contract. [573-574]
The fact that the plaintiff in an action on a construction contract providing for arbitration also asserted a claim under G. L. c. 93A, § 11,
did not preclude the judge from staying court proceedings pending arbitration, where the consumer protection claim was essentially a
private dispute arising out of a commercial transaction and lacked any
aspect of strong public policy. [574-576]

CIVIL ACTION commenced in the Superior Court Department on April 21, 1982.

Pretrial motions respecting arbitration were heard by *Dimond,* J.

*Bernard J. Bonn, III (Eric A. Deutsch* with him) for
Teradyne, Inc.

*Marc Redlich (Steven M. Sayers* with him) for Greenleaf
Engineering & Construction Company, Inc. & others.

CUTTER, J. This dispute grows out of two contracts, each
dated April 3, 1980. The first (Contract No. 1), between

---

[1] Sidney J. Greenleaf.

Teradyne, Inc. (Teradyne), and Greenleaf Engineering & Construction Company, Inc. (Construction), provided that Construction was to perform services as project manager/construction manager with respect to the renovation of 1000 Washington Street, Boston. The second contract (Contract No. 2), between Teradyne and Greenleaf Engineers, Inc. (Engineers), provided that Engineers was to furnish other professional services as project engineer on the same renovation. Contract No. 2, but not Contract No. 1, contained a broad provision for arbitration.

Construction brought this action against Teradyne on April 21, 1982, to recover a fee for services related to Contract No. 1. The complaint alleged that on July 31, 1981, Construction and Teradyne had executed a settlement agreement.[2] In that Teradyne had released Construction "from all claims for costs and expenses due to any asserted failure" to perform under Contract No. 1. Construction under that agreement was to negotiate a settlement fee with Teradyne "as soon as practicable."

Teradyne in its answer filed a counterclaim against Construction and also a third-party claim joining as third-party defendants Engineers and Sidney J. Greenleaf, individually. Both the counterclaim and the third-party claim asserted counts in contract, fraud, misrepresentation, and negligence against Construction, Engineers, and Greenleaf, as well as counts under G. L. c. 93A, § 11.

Greenleaf, as president of Construction and of Engineers, respectively, had signed both Contract No. 1 and Contract No. 2. It appeared, from pleadings (and exhibits thereto) and affidavits, that Greenleaf was a director and a shareholder of Construction. Engineers and Construction had the same mail address. Engineers apparently had been in existence for some time before negotiations for the two

---

[2] The trial judge recorded in his memorandum and order on the two motions now before us that Teradyne's counsel at the oral argument before him conceded that Teradyne was assisted by counsel in the preparation of the settlement agreement.

contracts were completed. Construction, however, was not organized as a corporation until shortly before the contracts were signed.

A vice-president of Teradyne, Owen Robbins, by affidavit stated that he had dealt almost entirely theretofore with Greenleaf as the president of "Engineers and the controlling person in . . . [that] company" and had been persuaded by him that Greenleaf should assume "the dual roles of Project Engineer and Project Manager/Construction Manager." Robbins's affidavit, however, reveals that he, for Teradyne, knew that he was dealing with two separate corporations.

On a motion by Engineers, a Superior Court judge ordered Teradyne and Engineers to proceed to arbitration on the issues between them, as required by Contract No. 2. He denied Teradyne's motion to require Construction to arbitrate its claims against Teradyne under Contract No. 1 and the settlement agreement, and stayed (pending arbitration) further court proceedings in the controversy between Teradyne and Engineers. Teradyne's motions (G. L. c. 231, § 118) for relief from these interlocutory orders were denied by a single justice of this court. The case is before us on Teradyne's appeal from the orders of the Superior Court. We agree with those orders essentially on the grounds concisely stated by the Superior Court judge. Because the orders under review are closely related, we discuss them both, although only one of the orders (that denying Teradyne's motion to compel Construction to arbitrate) would seem to be appealable under G. L. c. 251, § 18, inserted by St. 1960, c. 374, § 1. See *School Comm. of Agawam* v. *Agawam Educ. Assn.*, 371 Mass. 845, 846-848 (1977).

1. Teradyne argues that the relationship among Greenleaf (as an individual), Construction, and Engineers is close and that Greenleaf's influence in the affairs of Engineers and Construction is pervasive, particularly with respect to his and the corporations' participation in both contracts. From this Teradyne contends that Engineers'

obligation to arbitrate under Contract No. 2 should be treated as binding upon Construction under Contract No. 1.

The trial judge on this record was not required to regard the tripartite relationship among Construction, Engineers, and Greenleaf as so interwined that it was necessary for Construction to submit to arbitration its claims under Contract No. 1 and the settlement agreement (neither of which provided for arbitration). Teradyne had dealt sufficiently with Construction and Engineers separately, at least in negotiating the settlement agreement, as to permit the trial judge to treat the corporations as separate entities with respect to arbitration. The record, at least at this stage, does not show fraudulent, unconscionable, or ambiguous behavior, requiring disregard of the corporate entity of either corporation. See the discussion in *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 618-621 (1968), and cases there cited at 619 n.7. The trial judge concluded that the case came within the general rule laid down in *Galdi* v. *Caribbean Sugar Co.*, 327 Mass. 402, 407-408 (1951), and *Westcott Constr. Corp.* v. *Cumberland Constr. Co.*, 3 Mass. App. Ct. 294, 297-299 (1975), and reasonably refused to order a consolidated arbitration, including Construction's claims.[3] See *Stop & Shop Cos.* v. *Gilbane Bldg. Co.*, 364 Mass. 325, 328-330 (1973). See also *Danvers* v. *Wexler Constr. Co.*, 12 Mass. App. Ct. 160, 162-167 (1981).

2. Teradyne also contends that its claim against Engineers under G. L. c. 93A, § 11, cannot be referred to arbitration. Such a result is not required by *Hannon* v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 825-827 (1982). In that case (brought under c. 93A, § 9) it was held that c. 93A, § 9(6), inserted by St. 1973, c. 939, precluded the issuance of a stay of court proceedings during arbitration in an action under § 9 by a *consumer*. Subsections (6) to (8) of § 9 expressly make it unnecessary for consumer plaintiffs to

---

[3] Compare the results in *Interocean Shipping Co.* v. *National Shipping & Trading Corp.*, 523 F.2d 527, 538 (2d Cir. 1975), cert. denied, 423 U.S. 1054 (1976).

exhaust broadly defined administrative and other remedies before proceeding under c. 93A, § 9. As the trial judge properly pointed out, no such provision appears in § 11 (as inserted by St. 1972, c. 614, § 2) which provides a c. 93A remedy to a "person who engages in the conduct of any trade or commerce and who suffers any loss" as a result of practices defined in c. 93A, § 2. See the discussion in 1 Alperin & Chase, Consumer Rights and Remedies, §§ 126 & 140 (1979 & Supp. 1981). See also *J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 540-541 (1976).[4]

The trial judge correctly declined to apply to the present case the principles of *Wineland* v. *Marketex Intl., Inc.,* 28 Wash. App. 830 (1981), which excluded from arbitration a case under the State of Washington Consumer Protection Act on the ground (at 834-835) that the statute was "a state anti-trust law" and that claims under the statute must be settled judicially. The Washington case relied on Federal decisions holding that anti-trust claims are not arbitrable. See, e.g., *Applied Digital Technology, Inc.* v. *Continental Cas. Co.,* 576 F.2d 116, 118-119 (7th Cir. 1978); *Lee* v. *Ply *Gem Indus., Inc.,* 593 F.2d 1266, 1274-1275 (D.C. Cir.), cert. denied, 441 U.S. 967 (1979). See also *In re Arbitration between Aimcee Wholesale Corp. & Tomar Prod., Inc.,* 21 N.Y.2d 621, 626-630 (1968). The cases just cited rely in large measure upon a theory that claims having an antitrust aspect are not merely a private matter but affect the public interest.

---

[4] There it was stated (at 541) that c. 93A, § 9(6)-(8), "though not applicable to an action under § 11," may "provide a useful analogy" (at least insofar as § 9 provides for a stay rather than dismissal) when for some reason exhaustion of administrative remedies may be desirable in an action under § 11. *Nelson* v. *Blue Shield of Mass., Inc.,* 377 Mass. 746, 754-755 (1979). *Frank J. Linhares Co.* v. *Reliance Ins. Co.,* 4 Mass. App. Ct. 617, 621-622 (1976). In each of the cases just cited, it was assumed that an action under c. 93A, § 11, might be stayed or dismissed pending the exhaustion of other remedies, using language broad enough to include arbitration. See the *Hannon* case, 385 Mass. at 826.

The trial judge correctly concluded that the present claims of Teradyne under its common law counts and c. 93A constitute "a private matter" which "does not significantly involve public interest factors . . . as . . . in antitrust cases." He then relied (as we do) upon *Flower World of America, Inc.* v. *Wenzel*, 122 Ariz. 319, 323-324 (Ct. App. 1978), where in a well-reasoned opinion by Judge Schroeder,[5] with full citation of authority the Arizona Court of Appeals declined to exclude from arbitration (under a broad arbitration provision) a claim under the Arizona consumer fraud statute, "essentially a private dispute arising out of a commercial transaction." Teradyne's third-party complaint against Engineers in count 12 merely repeats general allegations made with respect to its common law counts against Engineers for breach of contract, negligence, fraud, and misrepresentation. To these allegations is added a brief conclusory allegation that Engineers' acts were "unfair and deceptive" and constituted "knowing and willful" violations of c. 93A, § 2. Nothing in these somewhat sparse allegations suggests that they seek to vindicate any aspect of strong public policy. Instead, they appear to be an attempt to bolster and supplement clearly private claims.

The appeal from the order of the Superior Court that Teradyne proceed to arbitration under its third-party claims against Engineers (and staying further court proceedings on those claims) is dismissed. The order of the Superior Court refusing to direct Construction to arbitrate its claims against Teradyne is affirmed.

*So ordered.*

---

[5]Now a Circuit Judge, U.S. Court of Appeals, 9th Circuit.