Sosman, J.
Plaintiff John Rigatti has brought the present action pro se complaining that defendant LPG USA (“LPG”) sold him medical equipment that did not conform to the promises made by LPG’s agent, that LPG failed to conduct promised promotional and advertising efforts, that LPG failed to take the machine back as promised, and that LPG wrongfully reported his delinquencies in payment to credit agencies. Plaintiff brings counts for breach of contract (Count I), violation of G.L.c. 93A (Count II), and violation of G.L.c. 214, §1B. Defendant has moved.to dismiss on the ground that the Order Form for the equipment contained an arbitration clause requiring that arbitration be brought in Broward County, Florida. For the following reasons, the motion to dismiss is DENIED.
Facts
Plaintiff John Rigatti is a licensed physician with offices in Auburn, Leominster and Southbridge, Massachusetts. In the fall of 1997, he was contacted by one Claude Elias, who identified himself as an agent of defendant LPG. Elias sought to sell Rigatti a machine known as an “endermologie machine,” which was used to perform “body sculpture” on patients.[1] Elias, on behalf of LPG, promised that LPG would conduct promotions and advertising and that, by way of that program, would direct “scores of customers” to Rigatti’s offices. Elias also promised that, if Rigatti were not satisfied with the endermologie machine, LPG would take the machine back.
On October 8, 1997, Rigatti and Elias signed an “Order Form” for Rigatti’s purchase of the endermologie machine. The total price of the machine and related parts was $32,000, plus a $300 shipping charge, for a “Balance Due C.O.D.” of $32,300. Above the signature line, there was a paragraph entitled “Acceptance and Approval,” which read as follows:
Buyer/Lessee hereby acknowledges that he has read, understands and has received a copy of this entire Agreement, including the terms and conditions on the back of this page and acknowledges that Buyer/Lessee has read the reverse side of this Agreement and agrees to be bound by these terms. These terms and conditions apply only if there is a sale and not if the product is leased.
The terms and condition on the reverse of the Order Form included the provision (2) that “(t]itle to the Product(s) purchased shall pass to Buyer immediately upon (a) delivery of the Product(s) and (b) payment in full of the Purchase Price by wire transfer, cashier’s check, certified check, cash (C.O.D.) or execution of a valid lease agreement.” There was also a provision making the agreement assignable by LPG but not assignable by Rigatti (21).
The terms on the reverse of the Order Form also required arbitration of “[a]ny controversy or claim arising out of or in any way between the Buyer and the Seller, or any cause or event, including, without limitation, to claims arising out of the sale of license of said Products, or any other claim, dispute or issue.” (16.) The arbitration clause further specified that the arbitration could be brought “only in Broward County, Florida.”
On the same day, October 8, 1997, Rigatti executed an LPG “License Agreement,” which allowed Rigatti to use the trademarks and service marks, techniques, and procedures connected with the endermologie machine, subject to various conditions. The License Agreement also contained an arbitration clause (7):
Any action brought involving the Arbitration and/or enforcement of this Agreement or any of the covenants of this Agreement shall be submitted to Arbitration pursuant to the rules of the American Arbitration Association (AAA) and shall be so brought only in a court [of] competent jurisdiction in and for Broward County, Florida and the parties agree to waive any claim relating to forum non conveniens.
A week later, on October 15, 1997, Rigatti entered into a Lease Agreement for the machine with an entity known as HPSC, Inc. located at 60 State Street, Boston, Massachusetts. The Lease Agreement identified the equipment supplier as “Laser Clinique of New En *53 gland.’’[2] The lease term was fifty-one months, with monthly payments of $911.63. Massachusetts law was to govern, and the lessee (Rigatti) consented “to the jurisdiction of any State or Federal court located within Massachusetts.” HPSC was to be “the owner of and will hold title to the Equipment” (7), and Rigatti would have the option to purchase the machine for “fair market value” at the end of the lease term (12). The Lease Agreement further provided that, “(i]f you have entered into a purchase contract (“Supply Contract”) with any Supplier, you assign to us your rights under such Supply Contract, but none of your obligations (other than the obligation to pay for the Equipment).” (1.) HPSC disclaimed all warranties, and transferred to Rigatti “any warranties made by the manufacturer or Supplier under a purchase contract for the equipment.” ¶2. The Lease Agreement further provided that lease payments could not be withheld, reduced or set off on account of any claims concerning defects in the equipment or “any failures of the manufacturer or Supplier.” ¶ 13.
Rigatti alleges that he entered into the lease “(b)ased solely on the promises and representations made by Defendant’s agent, Claude Elias.” After receiving the machine, Rigatti alleges that LPG never sent him any patients and never did any promotions or advertising in Worcester County (where his offices were located). He tried the machine on some of his own patients “without positive results,” and he claims that LPG’s own “trainer” told him afterwards “that you would need a microscope to see any results.”
After going six months without any patients being sent to him, without any of the promised advertising or promotion, and without any successful results on his own patients, Rigatti contacted LPG and demanded that it take the machine back and refund the six months’ worth of payments that he had made to HPSC on the lease. LPG refused to do so.
On May 11, 1998, Rigatti sent LPG a G.L.c. 93A demand letter, demanding that it accept the return of the machine, indemnify him for any claim by HPSC, and pay him $10,000 “for my cost and loss of business opportunity.” LPG responded by letter dated June 18, 1998, stating that it was not LPG's policy to accept returns of equipment unless required by the manufacturer’s warranty. The letter also stated: “You elected to lease equipment from HPSC, Inc. As a result of your election to lease, the equipment was purchased and is now owned by HPSC.”
On June 9, 1998, HPSC sent Rigatti a default notice, including a warning that it would report all unpaid accounts “to your local credit bureau.” The complaint alleges that LPG, “through its agents,” caused the issuance of reports to credit agencies concerning the delinquencies in lease payments.
Discussion
LPG seeks dismissal of all claims based on the arbitration clause contained in its Order Form. Rigatti argues that the contract itself was induced by fraud and that he therefore should not be bound by any term in the contract. However, Rigatti's complaint makes no mention of any fraud with respect to the specific arbitration provisions of the contract. Unless there is fraud in the inducement with respect to the arbitration provision itself, a claim of fraud in the inducement with respect to the contract as a whole does not serve to avoid the arbitration clause. Quirk v. Data Terminal Systems, Inc., 379 Mass. 762, 765-68 (1980). Where there is a binding arbitration clause between two parties in trade or commerce, claims under G.L.c. 93A must also be submitted to arbitration. Greenleaf Engineering & Construction Co. v. Teradyne, Inc., 15 Mass.App.Ct. 571, 574-75 (1983).
The issue on this motion is whether the arbitration clause on the reverse of the Order Form is binding and enforceable.[3] The Order Form expressly states that its terms and conditions (which would include the arbitration clause) apply “only if there is a sale and not if the product is leased.” While certain provisions of the Order Form would appear to be applicable even in the case of a lease (e.g., the references to “Buyer/Lessee” and the provision that title passes to the buyer upon payment in full, including payment that is made by “execution of a valid Lease Agreement”), the language on the front of the form, just above the signature line, expressly states that the provisions of the Order Form do not apply “if the product is leased.”
At best, the Order Form is ambiguous on the issue of whether any of its terms still exist in the event that the transaction is done by way of a lease. Ambiguities in a contract are to be resolved against the drafter. Where this Order Form was a standard form prepared by LPG, ambiguities therein will be construed against LPG, and, to the extent that there is any ambiguity in the statement that the terms apply “only if there is a sale and not if the product is leased,” the court will interpret that language to mean that the terms and conditions contained in the Order Form are not applicable to any form of equipment lease transaction.
This interpretation is also reasonable in light of the parties’ expectations. Where a transaction ultimately takes the form of a lease, it is understandable that the terms of the equipment lease would supersede the terms of an earlier sale agreement. In this Lease Agreement, the agreements between buyer/lessee, lessor/lender, and supplier go beyond — and in some respects differ from — the straightforward sale transaction set forth in the Order Form. The Lease Agreement specified that HPSC, not Rigatti, held title to the equipment (contrary to the statement on the back of the Order Form that title would pass to Rigatti “upon execution of a valid Lease Agreement”).[4] In order to obtain title, Rigatti not only had to make the lease payments (which would cover the original $32,300 price plus interest) but would then have to make an additional payment of the “fair market value” of the *54 equipment. The Lease Agreement provided that Rigatti assigned his rights under the Order Form to HPSC, retaining only his obligation to'pay and his entitlement to enforce the seller’s warranties. However, the Order Form stated that it could not be assigned by the buyer — it was assignable only by LPG.
By stating that the terms of the Order Form did not apply to a lease transaction, LPG avoided any conflict, ambiguity or inconsistency between any lease and the Order Form. If the transaction were ultimately achieved by way of some form of lease, LPG and the buyer/lessee remained free to work out terms with the lessor/lender, unencumbered by the terms of the Order Form. The operative documents governing the transaction thus became the Lease Agreement between HPSC and Rigatti and whatever contractual arrangements LPG made with HPSC.
LPG argues that the lease in question was merely a finance lease governed by Article 2A of the Uniform Commercial Code (see 106 G.L. §2A-103(g)) and that, under such a finance lease, the “lessee retains all rights that the lessee may have against the supplier which arise from an agreement between the lessee and the supplier Or under other law.” 106 G.L. §2A-209(4). LPG contends that the Order Form was an “agreement between the lessee and the supplier” that is still in effect pursuant to §2A-209(4).[5] That this was a finance lease does not change the wording of the Order Form, which expressly cancelled the terms of the Order Form in the event of a lease. Nothing in §2A-209(4) mandates that the terms of a former contract between the supplier and the buyer/lessee remain in effect if, by that contract’s express wording, its terms are cancelled in the event of a lease. All §2A-209(4) does is make clear that the lessee/buyer has, in addition to the benefit of whatever warranties or promises the supplier has extended to the lessor (2A-209( 1)), the benefit of whatever contract he also has directly with the supplier. If he does not have such a contract, nothing in §2A-209(4) creates or imposes such a contract. Where, as here, LPG’s agreement with the buyer /lessee provides that its terms are not effective in the case of any lease, the subsequent lease cancels that earlier agreement and there is no longer any “agreement between the lessee and the supplier” that is in effect to provide the lessee with any additional rights under §2A-209(4). Instead, the buyer/lessee has his rights under the Lease Agreement and, pursuant to §2A-209(1), “(t]he benefits of a supplier’s promises to the lessor under the supply contract and of all warranties.” Nothing in §2A-209(4) resurrects terms of the Order Form where the Order Form expressly states that its terms do not apply to a lease transaction.
Where the terms of the Order Form are no longer binding between these parties, the Order Form’s arbitration clause is no longer binding. As such, the motion to dismiss must be denied.
ORDER
For the foregoing reasons, the Motion by Defendant LPG USA, Inc. to Dismiss Complaint is DENIED.

According to the approved advertising statement set forth in LPG’s standard license agreement for this machine, the procedure “will cleanse, beautify, promote attractiveness by contouring the body, and reduce the appearance of cellulite.”

On this record, the precise relationship between LPG and “Laser Clinique of New England” is unknown. According to the complaint. Elias held himself out as an agent of both LPG and HPSC and coordinated the entire transaction. He was paid his commission by HPSC. Rigatti's complaint makes no mention of “Laser Clinique of New England.”

Although there is also an arbitration clause in the License Agreement, that clause called for arbitration only of claims concerning the “enforcement or interpretation” of the License Agreement itself. Rigatti’s claims are not based on any violation of the License Agreement, nor do they require any interpretation of the License Agreement, and thus nothing in the License Agreement’s arbitration clause requires arbitration of this particular dispute.

Indeed, when Rigatti made demand upon LPG, LPG immediately disclaimed any liability because the transaction had become a lease transaction. LPG’s own view was that “the equipment was purchased and is now owned by HPSC.”

It is not clear on this record that LPG would even qualify as the “supplier” for purposes of Article 2A. According to the Lease Agreement, the “Equipment Supplier” was “Laser Clinique of New England.” The present record does not indicate whether “Laser Clinique of New England” is in fact LPG.