# Drywall Systems, Inc. *vs.* ZVI Construction Co., Inc.

No. 98-P-675.

Suffolk. November 17, 1999. - April 17, 2001.

Present: Jacobs, Smith, & Greenberg, JJ.

Further appellate review granted. 434 Mass. 1106 (2001).

*Contract,* Construction contract, Arbitration. *Arbitration,* Consumer Protection Act, Award, Damages, Attorney's fees. *Consumer Protection Act,* Unfair act or practice, Arbitration, Attorney's fees. *Damages,* Punitive, Attorney's fees.

In a construction contract dispute, the arbitrators did not exceed their authority by awarding multiple damages under G. L. c. 93A, § 11: this court concluded that, under a broad form arbitration clause, such an arbitral remedy is encompassed by *Greenleaf Engr. & Constr. Co.* v. *Teradyne, Inc.,* 15 Mass. App. Ct. 571 (1983). [355-363]

The ruling of *Floors, Inc.* v. *B.G. Danis of New England, Inc.,* 380 Mass. 91 (1980), prohibits the arbitral award of attorney's fees pursuant to G. L. c. 93A, § 11, absent an express agreement of the parties. [363-364]

Civil actions commenced in the Superior Court Department on March 19, 1997, and June 12, 1997, respectively.

The cases were ordered consolidated by *John C. Cratsley,* J., and were heard by him on motions for summary judgment.

*Peter J. Gagne* for the plaintiff.

*Harvey Weiner* (*John J. O'Connor* with him) for the defendant.

Jacobs, J. An arbitration panel resolved a construction contract dispute in favor of the plaintiff (Drywall) with an award that included treble damages and attorney's fees under G. L. c. 93A, § 11. In the course of addressing the parties' claims under G. L. c. 251, a Superior Court judge allowed a motion for partial summary judgment filed by the defendant (ZVI), concluding that the arbitrators exceeded their authority by awarding multiple damages and attorney's fees. A judgment was entered vacating the arbitration award to the extent that it allowed c. 93A dam-

ages and fees, but otherwise confirming the award to Drywall in the amount of $447,365, plus interest, and arbitration costs. Both parties appeal. Drywall seeks to restore the award of multiple damages and attorney's fees, and ZVI claims that the underlying award should not have been confirmed, citing evidentiary errors by the arbitrators.

1. *Background.* Pursuant to five contracts entered into by the parties, Drywall was to perform, as subcontractor, specified construction work at five retail store sites where ZVI was the general contractor. Two of the sites were in Ohio, two were in New York, and one was in Massachusetts. Each contract was governed by the following arbitration provision: "Any controversy or [c]laim arising out of or related to the [c]ontract, or the breach thereof, shall be settled by arbitration, in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association" (AAA).

In 1995, Drywall filed a demand for arbitration with the AAA seeking monies due under the contracts and "treble damages and legal fees for violation of c. 93A." Drywall also sought "delay and business liquidation damages" and compensation for extra work. Approximately twenty days of hearings were held before a panel of three arbitrators in Boston during the period between June, 1995, and April, 1996. During the initial hearing, the parties stipulated that Massachusetts law would be applied to each of the contracts in issue. On January 15, 1996, after the completion of approximately fifteen days of hearings, ZVI filed a counterclaim with respect to Drywall's Massachusetts contract alleging fraud, misrepresentation, breach of contract, and "violation of c. 93A" and seeking "$57,250 plus treble damages" and other fees and costs.

In 1996, the arbitrators awarded Drywall various amounts with respect to each of the five contracts at issue totaling $447,365, and found against ZVI with respect to its counterclaim. They also found, referencing c. 93A, §§ 2[1] and 11, that ZVI committed unfair and deceptive acts and practices "primarily and substantially" within Massachusetts and that

---

[1]General Laws c. 93A, § 2, declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

ZVI's acts and omissions were "willful and knowing." The panel further awarded to Drywall "treble damages" of $894,730 in addition to its contract damages of $447,365. They also awarded Drywall its "reasonable attorney's fees" in the amount of $146,000.

2. *Arbitrability of c. 93A, § 11, multiple damages claims.* In ruling that the arbitrators exceeded their authority by awarding multiple damages, the judge relied on a 1989 amendment to c. 93A, § 11, and two cases interpreting that amendment: *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass. 31 (1991), and *Clegg* v. *Butler*, 424 Mass. 413 (1997). We set out a portion of § 11 with the amendment italicized:

> "If the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section two. *For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence regardless of the existence or nonexistence of insurance coverage available in payment of the claim.*"[2]

Contrary to the judge's decision, the 1989 amendment to c. 93A, § 11, does not operate to prohibit an arbitral award of multiple damages in the circumstances of this case. In explaining the purpose of the same language, simultaneously inserted in G. L. c. 93A, § 9(3) (see note 2, *supra*), the Supreme Judicial Court stated the objective was to "penalize insurers who unreasonably and unfairly force claimants into litigation by wrongfully withholding insurance proceeds." *Clegg* v. *Butler*, *supra* at 425. As pointed out by Justice Kaplan in *Yeagle* v. *Aetna Cas. & Sur. Co.*, 42 Mass. App. Ct. 650, 654-655 (1997), the amendment reflected dissatisfaction with a line of cases brought against insurers limiting damages under c. 93A to double or triple those directly caused by the unfair practice and

---

[2]Statute 1989, c. 580, § 2, approved December 5, 1989, inserted the italicized sentence. The same sentence was also added to G. L. c. 93A, § 9(3), by St. 1989, c. 580, § 1.

was directed at cases in which the "insurer had acted in bad faith in declining reasonable settlement," thereby obliging a claimant to file suit and obtain a judgment on the underlying claim.[3] The perceived inequity was that a plaintiff who brought a c. 93A action after obtaining a judgment on the underlying claim could recover only what amounted to loss of use damages for the period of the wrongful withholding. *Id.* at 654. The response of the amendment was to permit recovery of a multiple of the underlying judgment itself, generally a far greater penalty to the defendant. See *Greelish* v. *Drew*, 35 Mass. App. Ct. 541, 544 (1993).

That statutory response has been circumscribed by *Bonofiglio* and *Clegg. Bonofiglio* held that an arbitrator's award on an underlying claim is not a "judgment" within the meaning of the amendment and, therefore, cannot serve as a basis for multiple damages. In *Clegg*, the court took a similar approach, not permitting a settlement of the underlying claims to be a multiplicand for multiple damages purposes. These cases, however, do not have the broad effect accorded them by the judge. Both cases involved combined G. L. c. 176D and c. 93A claims of unfair settlement practices brought against insurers and out-of-court resolutions of underlying personal injury claims by way of arbitration or settlement. Each rejected an attempt under c. 93A to multiply the amount paid on the underlying claim on the ground that the amendment permitted only the multiplication of a "judgment" based on that underlying claim. Given the purpose of the 1989 amendment, these cases may be seen as applying only to actions against insurers for unfair settlement practices. See *Clegg* v. *Butler, supra* at 425, describing the amendment "[a]s part of a statutory scheme meant to encourage out-of-court resolutions." So narrowly confined, neither *Bonofiglio* nor *Clegg* applies to the circumstances of the case before us. Viewed more broadly, the rule that emerges from *Bonofiglio* and *Clegg* is that, in order for a party to be awarded § 11 multiple damages on its underlying claim, as

---

[3]For similar discussions as to the origin of the amendment, see *Clegg* v. *Butler*, 424 Mass. 413, 424 (1997); *Kapp* v. *Arbella Mut. Ins. Co.*, 426 Mass. 683, 685-686 (1998); *Greelish* v. *Drew*, 35 Mass. App. Ct. 541, 542 n.3 (1993); *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. 748, 753-755 (1996).

distinguished from loss of use damages, the underlying claim must have been reduced to a judgment, see *Metropolitan Prop. & Cas. Ins. Co.* v. *Choukas*, 47 Mass. App. Ct. 196 (1999), or must have been resolved in the same proceeding, see *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 27-29, cert. denied, 522 U.S. 1015 (1997) (upholding doubling of underlying jury verdict pursuant to § 11, by judge in same proceeding); *St. Paul Surplus Lines Ins. Co.* v. *Feingold & Feingold Ins. Agency, Inc.*, 427 Mass. 372, 374-376 (1998) (upholding award of multiple damages under § 11, in same proceeding as established damages on underlying tort claims).[4] Under this broader view, there also is no restriction against the award of actual and punitive damages in the same arbitral proceeding.

To place the issue before us in context, we first examine the reach of *Greenleaf Engr. & Constr. Co.* v. *Teradyne, Inc.*, 15 Mass. App. Ct. 571 (1983), decided before the enactment of the amendment. It involved claims arising from a private construction project and included common law contract and tort counts as well as counts under c. 93A, § 11. This court construed a broad arbitration clause in the parties' contract as supporting arbitration of a c. 93A, § 11, claim together with the common law claims. In the course of affirming a Superior Court order staying court action and permitting arbitration to proceed, the court noted that the § 11 claims, arising as they did from commercial contracts between private parties, did not seek to "vindicate any aspect of strong public policy," *id.* at 576, and, therefore, their resolution was not the exclusive prerogative of the judiciary.[5] We agree with the observation of a commentator that the *Greenleaf* decision, while not foreclosing the possibility

---

[4]See also *Datacomm Interface, Inc.* v. *Computerworld, Inc.*, 396 Mass. 760, 777-780 (1986), permitting a judge to assess multiple damages under § 11, based upon a master's findings on an underlying tort claim. This case was cited in *St. Paul Surplus Lines Ins. Co.*, *supra* at 376.

[5]In *Greenleaf*, the court declined to apply the principles of *Wineland* v. *Marketex Intl., Inc.*, 28 Wash. App. 830 (1981), "which excluded from arbitration a case under the State of Washington Consumer Protection Act on the ground . . . that the statute was 'a state anti-trust law' and that claims under the statute must be settled judicially," *Greenleaf*, *supra* at 575, explaining "[t]he Washington case relied on Federal decisions holding that anti-trust claims are not arbitrable. . . . The cases just cited rely in large measure upon a theory that claims having an antitrust aspect are not merely a private matter

that "some c. 93A claims might implicate public policy," nevertheless strongly suggested that "most commercial c. 93A claims are 'private' in character."[6] Shell, The Power to Punish: Authority of Arbitrators to Award Multiple Damages and Attorneys' Fees, 72 Mass. L. Rev. 26, 28 n.13 (1987) (hereafter Shell).

*Greenleaf* supports the proposition that statutory claims may be the subject of arbitration. See *Shearson/Am. Exp. Inc.* v. *McMahon*, 482 U.S. 220, 226 (1987) ("[The] duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights"). Given the parallels between the case before us and *Greenleaf*, there is little question that Drywall's § 11 claims of unfair and deceptive acts and practices were subject to arbitration. Both cases involve a broad arbitration clause, a demand that a c. 93A, § 11, claim be arbitrated, and an essentially private dispute arising from a commercial agreement between private parties relating to private construction projects. The residual issue is whether the arbitrators acted within their authority in awarding multiple damages.

While *Greenleaf* does not speak expressly to whether arbitrators properly entertaining a c. 93A, § 11, claim may award multiple damages, we conclude that such an arbitral remedy is encompassed by that decision. The claim, which the court permitted to be arbitrated without limitation, included allegations of "knowing and willful" violations of c. 93A, the prerequisite for multiple damages under § 11. By observing that those allegations "bolster and supplement" private claims,

---

but affect the public interest." (Citations omitted.) *Ibid.* The attitude reflected in *Wineland* might well have changed, given the departure by the Federal courts since 1985 from the once general rule that antitrust claims are not arbitrable. See *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985); *Shearson/Am. Exp. Inc.* v. *McMahon*, 482 U.S. 220 (1987); *Kowalski* v. *Chicago Tribune Co.*, 854 F.2d 168 (7th Cir. 1988).

[6]To the same effect, see *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 379 (1990) (indicating that a c. 93A, § 11, claim arising from a breach of warranty reflected a purely commercial dispute that did not affect the public interest, and citing *Greenleaf* and *Flower World of America, Inc.* v. *Wenzel*, 122 Ariz. 319 [Ct. App. 1978], which had also been relied upon in *Greenleaf* and which declined to exclude a claim under the Arizona consumer fraud statute from arbitration, noting that the dispute arose from a commercial transaction and was essentially private).

the court gave implicit approval to the award of multiple damages. *Greenleaf, supra* at 576. It is also significant that *Greenleaf*, in allowing arbitration to proceed, tacitly recognized that arbitrators are permitted to perform the same function as "the court" under § 11, in assessing claimed violations of G. L. c. 93A. See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 378 (1990). Such an expansive interpretation of § 11 is not inconsistent with the literal reading of "judgment" in *Bonofiglio* and *Clegg* in light of the limited purpose of the 1989 amendment.

Further support for the award of multiple damages may be found in the language of the arbitration clause agreed to by the parties. The clause covers, without limitation, "[a]ny controversy or [c]laim," and mandates that such controversy or claim "shall be settled by arbitration." Also, the parties agreed to be bound by the Construction Industry Arbitration Rules of the AAA, as amended and effective on November 1, 1993, rule 43 of which permitted "any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement." Notwithstanding its partial circularity, an arbitration clause of such wide scope is "sufficiently broad to encompass the award of punitive damages." *Raytheon Co.* v. *Automated Bus. Sys., Inc.*, 882 F.2d 6, 10 (1st Cir. 1989) (interpreting similar contract language under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.).[7]

It is significant that there is no express statutory prohibition of arbitral determination of multiple damages under either c. 93A, § 11, or c. 251. "Absent contrary statutory direction, the strong public policy in favor of arbitration of commercial

---

[7]That the parties intended the broad arbitration clauses in their agreements to encompass statutory multiple damage claims and construed them as doing so is confirmed by: (1) the fact that Drywall's demand for arbitration sought "treble damages and legal fees for violation of c. 93A"; (2) the absence of any jurisdictional objection by ZVI to either the arbitrators or the Superior Court under G. L. c. 251, § 2(*b*); and (3) the filing by ZVI of a counterclaim that included a demand for "treble damages."

In light of ZVI's rejection of the arbitrators' request during the arbitration hearing that it stipulate to the applicability of c. 93A multiple damages, we do not treat the counterclaim, apparently brought for defensive purposes in one of the five cases before the panel, as creating an estoppel or as tantamount to a waiver of its right to object to the award on jurisdictional grounds on appeal.

disputes should be given effect." *Minton Constr. Corp.* v. *Commonwealth*, 397 Mass. 879, 880 (1986). The importance of the absence of restrictive statutory language is underscored by the express exclusion of counsel fees in c. 251, § 10, discussed *infra*, indicating that the Legislature was able to limit the scope of an arbitral award when it was so inclined.

A pragmatic consideration further guides our decision. The decision below would permit an arbitrator to award actual damages under c. 93A, § 11, while reserving the issue of multiple damages to the courts. Aside from perhaps causing some parties to reject arbitration in their contracts, thereby defeating the established public policy favoring arbitration of commercial disputes, such a court-imposed scheme would require that a commercial contractor who has agreed to arbitration and is asserting a wilful or knowing contractual violation under § 11, first establish actual damages in arbitration and then obtain a confirmatory judgment in the Superior Court under c. 251. Subsequently, that party would be required to pursue a separate suit in which the merits of the underlying dispute necessarily would be revisited in order to establish a wilful or knowing violation to obtain a punitive judgment. See *Metropolitan Prop. & Cas. Ins. Co.* v. *Choukas*, 47 Mass. App. Ct. 196 (1999). Such a complex hybrid process meets neither the judicial nor the arbitral objectives of speedy and economic resolution of commercial disputes. By contrast, permitting arbitrators to impose § 11 punitive damages ordinarily would entail only perfunctory confirmatory proceedings to produce an enforceable final judgment.

While the case law across the country reflects a variety of approaches to the general issue of the arbitrability of punitive damages,[8] we believe the balance of policy considerations

---

[8]Cases opposing and supporting arbitral awards of punitive damages are summarized in Annot., Arbitrator's Power to Award Punitive Damages: *Garrity* v. *Lyle Stuart, Inc.* Reconsidered, 83 A.L.R. 3d 1037 (1978 & Supp. 2000). See also Stipanowich, Punitive Damages in Arbitration, 66 B.U. L. Rev. 953, 957 n.15 (1986); 1 Domke, Commercial Arbitration § 30.05 (Supp. 2000). A plurality of jurisdictions appears to support such an award. The Supreme Court recently has upheld an arbitral award of punitive damages under the Federal Arbitration Act in a case involving a broad form arbitration

weighs in favor of § 11 multiple damages[9] being fully within an arbitrator's jurisdiction under a broad form arbitration clause.[10] Among the favorable factors are (1) "[t]he strong presumption of arbitrability," *Commerce & Indus. Ins. Co.* v. *Bayer Corp.*, 433 Mass. 388, 397 (2001), and cases cited, and the recognition of arbitration as an established and practical tool for the resolution of commercial disputes, see *Minton Constr. Corp.* v. *Commonwealth, supra* at 880; (2) the general proposition that, absent a statutory prohibition, there is no reason to preclude the application of the full range of a statute's remedies in a single arbitration, see *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-627 (1985); and (3) our observation that the objectives of punitive damages, which include compensating claimants for their legal costs and emotional injuries and punishing and deterring actual and potential wrongdoers, see Rice, Exemplary Damages in Private Consumer Actions, 55 Iowa L. Rev. 307, 309 (1969), generally may be as well served by arbitrators as by judges and juries.[11]

We regard the contrary view, the signal representative of which is *Garrity* v. *Lyle Stuart, Inc.*, 40 N.Y.2d 354 (1976), to be far less compelling. The *Garrity* approach grounds its objection to the arbitral award of punitive damages on the proposition that "[p]unitive damages is a sanction reserved to the

---

clause. *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 61-64 (1995).

[9]The multiple damages provisions of c. 93A have been held to be analogous to punitive damages. *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 856 n.21 (1983).

[10]The parties' arbitration clause, covering any controversy or claim "arising out of or related to" their contracts, is of a sort generally regarded as "very broad" in scope. *Loche* v. *Dean Witter Reynolds, Inc.*, 26 Mass. App. Ct. 296, 303 & n.9 (1988).

[11]As noted in Shell, *supra* at 34, "[t]he only purpose of punitive relief arguably *not* served by an arbitrator's award would be the deterrence of other potential wrongdoers through the public dimension of a conventional trial, appeal and published judicial opinion" (emphasis original). In the case of commercial arbitration, however, both traditional and modern electronic methods of information dissemination are likely to bring the news of arbitration awards to other members of the same trade or industry.

State." *Id.* at 356. While that view has respectable support,[12] we join those jurisdictions that "have discounted the 'public' nature of the punitive remedy and focused on the need to punish the individual defendant as well as the need to preserve arbitration as a respected alternative dispute resolution forum." Shell, *supra* at 31.[13]

Another rationale offered in *Garrity* in opposition to arbitral award of punitive damages is the traditional resistance of the common law to imposing penalties for breach of contract. *Garrity, supra* at 358. See *A-Z Servicenter, Inc.* v. *Segall,* 334 Mass. 672, 675 (1956). This approach fails to persuade us, given that c. 93A violations in many respects resemble torts more than breaches of contract. See *Computer Systems Engr., Inc.* v. *Qantel Corp.,* 571 F. Supp. 1365, 1371 (D. Mass. 1983), aff'd., 740 F.2d 59 (1st Cir. 1984). This is illustrated by the c. 93A case presented by Drywall, which included assertions clearly analogous to tort to the effect that ZVI committed fraud and deceit, conspired to have Drywall's valid claims for compensation disallowed, and intentionally withheld payment due Drywall for reasons other than inability to pay or genuine disputes over liability.

Claimed concern for the finality of arbitration awards is yet another basis for resistance to the arbitrability of punitive damages. This argument focuses on the fact that punitive damages ordinarily would not come under the same judicial scrutiny under arbitration statutes as would those awarded in a court. Accordingly, a judge, concerned with the possible abuse by arbitrators of the power to punish, would be inclined to closely review punitive awards under a public policy standard, thereby detracting from the statutory objective of finality of arbitration results. See *Garrity, supra* at 359. This argument fails to recognize that commercial parties regularly choose arbitrators from among persons familiar with the issues, standards, and

---

[12]See, e.g., *School City of E. Chicago* v. *E. Chicago Fedn. of Teachers, Local #511,* 422 N.E.2d 656, 662-663 (Ind. Ct. App. 1981); *Shaw* v. *Kuhnel & Assocs.,* 102 N.M. 607, 609 (1985); *Kennewick Education Assn.* v. *Kennewick Sch. Dist. No. 17,* 35 Wash. App. 280, 281-282 (1983).

[13]For a comprehensive evaluation and rejection of the *Garrity* doctrine, see Stipanowich, Punitive Damages in Arbitration: *Garrity* v. *Lyle Stuart, Inc.* Reconsidered, 66 B.U. L. Rev. 953 (1986).

workings of the field of commerce from which the dispute derives, who are as competent as judges to recognize punishable conduct. See Stipanowich, Punitive Damages in Arbitration: *Garrity v. Lyle Stuart, Inc.* Reconsidered, 66 B.U. L. Rev. 953, 1002-1003 & n. 273, 1011 (1986). It also implicitly recalls "the time when judicial suspicion of the desirability of arbitration and the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626-627 (1985). In any event, the marginal risk that statutory standards of limited review of arbitration awards, see G. L. c. 251, §§ 12 & 13, will not be honored is more than offset by the risk that commercial contractors will refuse to agree to arbitration as a dispute resolution mechanism because of the unavailability, in one proceeding, of the full range of c. 93A remedies. We conclude that the better-reasoned arguments favor the restoration of the award of § 11 multiple damages to Drywall.[14]

3. *Attorney's fees.* The sixth paragraph of G. L. c. 93A, § 11, provides in pertinent part: "If the court finds . . . that there has been a violation of section two, the petitioner shall . . . be awarded reasonable attorneys' fees and costs incurred in said action." The policy considerations that support the arbitral award of multiple damages might similarly influence the award of attorney's fees under the parties' broad arbitration agreement were it not for the precedential force of *Floors, Inc. v. B.G. Danis of New England, Inc.,* 380 Mass. 91 (1980). There, the court balanced a statutory requirement mandating the award of legal fees (G. L. c. 149, § 29) against G. L. c. 251, § 10, which states: "Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses,

---

[14]We reject ZVI's claim that the award under § 11 was prohibited because the activity upon which it was based occurred essentially outside of Massachusetts. Even were we to conclude that this claim is within the scope of judicial review under G. L. c. 251, the evidence before the panel relating to ZVI's improper conduct originating from its Boston office supports the arbitrators' finding that the "unfair and deceptive acts and practices occurred primarily and substantially within the Commonwealth of Massachusetts." See *Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.,* 25 Mass. App. Ct. 302, 310-311 (1988). That finding also implies that ZVI did not meet the burden of proof placed on it under the last paragraph of G. L. c. 93A, § 11.

*not including counsel fees*, incurred in the conduct of the arbitration, shall be paid as provided in the award'' (emphasis supplied). The court essentially concluded that the express exclusion of counsel fees in the arbitration act trumps the legal fee mandate of the statute otherwise being enforced by the arbitrators. *Floors, Inc.* v. *B. G. Danis of New England, Inc.*, *supra* at 95-101. Nothing has occurred in the courts or Legislature since *Floors* that permits the arbitral award of attorney's fees pursuant to G. L. c. 93A, § 11, absent an express agreement of the parties. See *Baxter Health Care, Corp.* v. *Harvard Apparatus, Inc.*, 35 Mass. App. Ct. 204, 208 (1993) ("In the absence of an agreement to award fees, the award of fees is prohibited by G. L. c. 251, § 10"). See also *Raytheon Co.* v. *Computer Distribs., Inc.*, 632 F. Supp. 553, 559 (D. Mass. 1986).

4. *Other claims.* There is no merit to ZVI's claims that the arbitrators exceeded their authority by denying its motion to compel the delivery of certain lien waivers and by improperly refusing to hear relevant evidence. Whether the parties' agreement required the delivery of the waivers is a matter of contractual interpretation well outside the "very narrow" scope of judicial review. *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). While the claim of refusal to hear relevant evidence facially falls within the ambit of judicial review under G. L. c. 251, § 12(a)(4),[15] it is, on this record, much overdrawn[16] and in effect is a claim of evidentiary error or error of fact. "Absent fraud, errors of law or

---

[15]In pertinent part, G. L. c. 251, § 12(a)(4), provides that: "Upon application of a party, the court shall vacate an award if: — (4) the arbitrators . . . refused to hear evidence material to the controversy . . . as to prejudice substantially the rights of a party . . . ."

[16]After a Drywall witness testified and was cross-examined at the arbitration hearing, ZVI's counsel reserved the right to question the witness following his production of certain documents. The arbitrators apparently decided not to permit such cross-examination but instead directed the witness to submit an affidavit and authorized ZVI to file a responsive affidavit. The witness's affidavit addressed the value and costs of certain changes with respect to one aspect of one of the five contracts between the parties. ZVI did not claim it was unable to produce information on the issue but asserted merely an inability "to fully defend its position on this issue." The panel unanimously denied ZVI's motion for reconsideration.

fact are not sufficient grounds to set aside an award." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, *supra* at 1007.

5. *Disposition.* The judgment of the Superior Court is modified to provide that the arbitration award is confirmed, except for the award of attorney's fees. Drywall's request for the award of appellate legal fees and costs is allowed with respect to its reasonable fees incurred in opposing ZVI's cross-appeal and restoring the award of multiple damages, but not with respect to fees incurred on the issue of the right to arbitral legal fees.[17] A detailed petition for fees shall be made to this court in accordance with *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 20 (1989), within fifteen days of rescript. ZVI will have fifteen days to respond.

*So ordered.*

---

[17]We do not read *Floors, Inc.* v. *B.G. Danis of New England, Inc.*, *supra* at 100, as precluding the award of appellate fees.