DRYWALL SYSTEMS, INC. *vs.* ZVI CONSTRUCTION CO., INC.
(and a companion case[1]).

Suffolk. November 8, 2001. - January 23, 2002.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Contract,* Construction contract, Arbitration, Damages. *Arbitration,* Consumer Protection Act, Award, Damages, Attorney's fees. *Consumer Protection Act,* Unfair act or practice, Arbitration, Attorney's fees, Damages. *Damages,* Consumer protection case, Punitive, Attorney's fees. *Public Policy.*

In a construction contract dispute, the parties' agreement to arbitrate encompassed an award of multiple damages under G. L. c. 93A, § 11, where the agreement was broad and did not contain any language that might be construed as a limitation on awards of punitive damages [666-667]; where the use of the word "judgment" in § 11 did not prohibit the arbitration panel from awarding multiple damages [667-669]; and where arbitration of multiple damages under § 11 furthered the legislative objective of forthright conduct in commercial dealings, and the clear benefits therefrom outweighed any detractions that could result from conflicts with other public policy considerations [669-671].

This court concluded that the directive that a prevailing party be awarded attorney's fees under G. L. c. 93A, § 11, on a finding that the claimant had been adversely affected by an unfair or deceptive act or practice, applied to an arbitration panel's award of a claim under § 11 despite the normal unavailability of attorney's fees in arbitration; further, where it was apparent from the arbitration panel's decision that the same events underlying the panel's conclusion that a contractor violated its contracts with the claimant governed the panel's determination that the contractor violated G. L. c. 93A, §§ 2 and 11, there was no need to remand the case for an apportionment of attorney's fees incurred in pursuit of the c. 93A claims. [671-673]

Claims in a contract dispute that an arbitration panel exceeded its authority when it denied a motion to compel delivery of certain lien waivers, refused to hear relevant evidence, and found that unfair or deceptive acts or practices occurred primarily and substantially in Massachusetts did not warrant overruling the arbitration panel. [673-674]

CIVIL ACTIONS commenced in the Superior Court Department on March 19, 1997, and June 12, 1997, respectively.

[1] ZVI Construction Co., Inc. *vs.* Drywall Systems, Inc.

The cases were heard by *John C. Cratsley*, J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Harvey Weiner* (*John J. O'Connor* with him) for ZVI Construction Co., Inc.

*Peter J. Gagne* for Drywall Systems, Inc.

Spina, J. An arbitration panel awarded multiple damages and attorney's fees under G. L. c. 93A, § 11, to Drywall Systems, Inc. (Drywall), in a dispute that arose out of several construction subcontracts between Drywall and ZVI Construction Co., Inc. (ZVI). Drywall brought an action under G. L. c. 251, § 11, to enforce the arbitration award. On cross motions for summary judgment a Superior Court judge ordered judgment for Drywall on the award of damages under the contracts, but concluded that the statute did not authorize arbitrators to award multiple damages and attorney's fees. Both parties appealed. The Appeals Court held that the statute authorized an arbitration award of multiple damages, but not an award of attorney's fees. *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 51 Mass. App. Ct. 353 (2001). We granted ZVI's application for further appellate review. We hold that multiple damages and attorney's fees may be awarded in arbitration of claims under G. L. c. 93A, § 11.

1. *Facts.* The following facts are undisputed. ZVI was the general contractor for construction projects at various Media Play retail stores. Drywall, as a subcontractor, agreed to perform certain work under five separate contracts at stores in Massachusetts, Ohio, and New York. Each contract contained a standard arbitration provision requiring the parties to submit to arbitration "[a]ny controversy or claim . . . arising out of or related to this [s]ubcontract." The general conditions in each contract likewise provided that "[a]ny controversy or [c]laim arising out of or related to the [c]ontract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association."

Disputes arose between the parties and on January 4, 1995, Drywall demanded arbitration, seeking unpaid balances due under the contracts, together with delay and business liquidation

damages. Drywall also sought "treble damages and legal fees for violation of [G. L.] c. 93A." During the course of arbitration, ZVI filed a counterclaim alleging breach of contract, fraud, misrepresentation, violations of G. L. c. 93A, and damages of $57,250, plus treble damages, interest, legal fees, arbitration fees, and costs.

The arbitration panel awarded Drywall $447,365 under the five contracts, and found against ZVI on its counterclaim. They also found that ZVI engaged in unfair and deceptive acts and practices under G. L. c. 93A, §§ 2 and 11, "primarily and substantially within the Commonwealth of Massachusetts," and that ZVI's conduct was wilful or knowing. The panel awarded Drywall treble damages, plus $146,000 in attorney's fees.

2. *Arbitration of multiple damage claims under G. L. c. 93A, § 11.* ZVI argues that (1) the parties never agreed to arbitrate G. L. c. 93A claims or multiple damages; (2) multiple damage awards in arbitration are expressly prohibited by G. L. c. 93A; and (3) public policy dictates that arbitrators may not award multiple or punitive damages.

(a) ZVI's contention that "none of the . . . contracts specifically expresses or references an agreement to submit [G. L.] c. 93A claims or claims for multiple damages or fees to arbitration," is unpersuasive. The parties agreed to submit to arbitration "[a]ny controversy or claim" arising out of or relative to the subcontracts,[2] and the agreement placed no limits on arbitrable claims.

"[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage . . . . Such a presumption is particularly applicable where the clause is . . . broad.' " *Local No. 1710, Int'l Ass'n of Fire Fighters* v.

---

[2]The contracts also provide that the parties agreed to be bound by the construction industry arbitration rules of the American Arbitration Association. Section 43 of the those rules permits an arbitrator to "grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties."

*Chicopee*, 430 Mass. 417, 421 (1999), quoting *AT&T Techs., Inc.* v. *Communications Workers*, 475 U.S. 643, 649 (1986). A broad arbitration clause, such as the one seen here, includes statutory claims under G. L. c. 93A, § 11. See *Greenleaf Eng'g & Constr. Co.* v. *Teradyne, Inc.*, 15 Mass. App. Ct. 571, 574-576 (1983). See also *Mugnano-Bornstein* v. *Crowell*, 42 Mass. App. Ct. 347, 352 (1997) (broad agreement to arbitrate "any controversy arising out of or in connection with . . . employment or termination of employment" included statutory claim under G. L. c. 151B).

Inherent in the parties' agreement to submit statutory claims to arbitration was their acquiescence in any remedies available under G. L. c. 93A, § 11. See *Greenleaf Eng'g & Constr. Co.* v. *Teradyne, Inc.*, *supra* at 576 (broad form arbitration agreement includes claims of wilful or knowing violations under G. L. c. 93A). See also *Raytheon Co.* v. *Automated Business Sys., Inc.*, 882 F.2d 6, 9 (1st Cir. 1989) (agreement providing "all disputes" arising from contract "shall be settled" through arbitration included award of punitive damages). Given the breadth of the parties' agreement to arbitrate and the absence of any language that might be construed as a limitation on awards of punitive damages, we conclude that the agreement encompassed an award of multiple damages.

(b) ZVI next argues that, even if the parties' agreement encompassed G. L. c. 93A claims and multiple damages, because an arbitrator's award is not a "judgment" under § 11, it cannot be the subject of multiplication for a wilful or knowing violation of the statute. Prior to 1989, multiple damages under G. L. c. 93A were limited to multiples of damages that were foreseeable and directly caused by an unfair or deceptive act or practice, i.e., loss of use damages. See *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366, 372 (1988); *Yeagle* v. *Aetna Cas. & Sur. Co.*, 42 Mass. App. Ct. 650, 654-655 (1997); *Wallace* v. *American Mfrs. Mut. Ins. Co.*, 22 Mass. App. Ct. 938, 939-940 (1986). In 1989, the Legislature amended G. L. c. 93A, § 11, fifth par., to provide that the "actual damages to be multiplied by the court shall be the amount of *the judgment* on all claims arising out of the same and underlying transaction or occurrence" (emphasis added). St. 1989, c. 580, § 2, approved

December 5, 1989.[3] By expanding recovery of punitive damages to a multiple of all damages caused by the unfair or deceptive act or practice, the amendment effectively overruled the judicial limitation on multiple damages under G. L. c. 93A. See *R.W. Granger & Sons* v. *J & S Insulation, Inc.*, 435 Mass. 66, 80 (2001); *Yeagle* v. *Aetna Cas. & Sur. Co.*, *supra* at 654.

The motion judge interpreted our decisions in *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass. 31, 37 (1991), *S.C.*, 412 Mass. 612 (1992), and *Clegg* v. *Butler*, 424 Mass. 413, 425 (1997), as prohibiting application of the multiplying provision of G. L. c. 93A, § 11, to an arbitration award because the award is not a "judgment" within the meaning of the 1989 amendment. In *Bonofiglio*, an insured received an arbitration award against its insurer, which the insurer promptly paid. The insured then brought suit against the insurer, alleging unfair practices under G. L. c. 176D, § 3 (9), and G. L. c. 93A, and requesting interest on the arbitration award as damages, plus multiple damages and attorney's fees. A jury returned a special verdict for the insured and doubled the amount based on the insurer's bad faith. The insured thereafter moved to double the arbitrator's award. The judge denied the motion, and we affirmed. Because the underlying contract damages had been determined in an unrelated arbitration proceeding, we held that they were not part of the "judgment" in the G. L. c. 93A action and therefore were not "subject to the multiplying provision of [G. L.] c. 93A." *Bonofiglio* v. *Commercial Union Ins. Co.*, *supra* at 38. Similarly, in *Clegg* v. *Butler*, *supra*, we rejected inclusion of a settled claim against an insured as a component of damages in the companion G. L. c. 93A claim against its insurer. Relying on *Bonofiglio* v. *Commercial Union Ins. Co.*, *supra*, we held that, "[w]hen a case has been settled outside the courtroom, there is no 'judgment' on which to base the multiple damage calculus." *Clegg* v. *Butler*, *supra* at 424. The central holding in each case was that, where multiple damages are sought under G. L. c. 93A based on "claims arising out of the same and underlying transaction," those claims must be determined in the same proceeding with the multiple damages claims. Neither case construed the word

[3]The same provision was added to G. L. c. 93A, § 9 (3). St. 1989, c. 580, § 1.

"judgment" in the 1989 amendments as prohibiting an arbitral award of multiple damages.

The 1989 amendment to § 11, as discussed *infra*, expanded the base on which multiple damages may be awarded. There is nothing in the amendment suggesting any limitation on the existing right of commercial parties to arbitrate § 11 claims. See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 378-379 (1990); *Greenleaf Eng'g & Constr. Co.* v. *Teradyne, Inc.*, *supra* at 576. Section 11 contains repeated references to the commencement of an action in "court," and the findings required by the "court" before various levels of damages may be awarded. Clearly, an arbitrator is not a "court," just as an arbitrator's award is not a "judgment," but we have never said that a claim under § 11 may not be arbitrated because an arbitrator is not a "court." The use of the word "judgment" in § 11 is merely contextual, referring to all damages that, in the aggregate, may be multiplied by a court for a wilful or knowing violation of § 11. The term does not preclude an arbitrator from imposing multiple damages any more than the term "court" precludes an arbitrator from considering a claim under § 11. An arbitrator's award of damages is the counterpart of a court's judgment for purposes of calculating multiple damages under § 11, and there is nothing in the 1989 amendment to suggest otherwise.

Neither G. L. c. 93A, § 11, nor G. L. c. 251, § 10, prohibits an arbitral award of multiple damages. "Absent contrary statutory direction, the strong public policy in favor of arbitration of commercial disputes should be given effect." *Minton Constr. Corp.* v. *Commonwealth*, 397 Mass. 879, 880 (1986). In addition, absent a statutory prohibition, an arbitrator generally has the same powers as a court to award multiple damages. Cf. *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-627 (1985) (arbitrator may award punitive damages under Sherman Act). We conclude that G. L. c. 93A, § 11, does not prohibit an arbitrator from awarding multiple damages.

(c) ZVI's final argument on the issue of arbitral authority to award multiple damages is that it violates public policy. ZVI first contends that public policy disfavors punitive damages. There is no merit to this contention. Although "[p]unitive dam-

ages are not allowed in this Commonwealth unless expressly authorized by statute," *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 813 (1991), G. L. c. 93A, § 11, expressly authorizes punitive damages.[4]

ZVI also contends that arbitration awards of multiple damages violate public policy because they constitute punitive damages that are valid only if imposed by a court, in a public forum, to vindicate the public interest. ZVI cites no Massachusetts authority in support of its argument, and relies on certain decisions from other jurisdictions, of which *Garrity* v. *Lyle Stuart, Inc.*, 40 N.Y.2d 354 (1976), is the signal case. There the court rejected arbitral authority to award punitive damages on the ground that "[p]unitive damages is a sanction reserved to the State." *Id.* at 356. In its comprehensive and well-reasoned analysis of this issue, the Appeals Court declined to follow the *Garrity* rationale, finding more persuasive "those jurisdictions that 'have discounted the "public" nature of the punitive remedy and focused on the need to punish the individual defendant as well as the need to preserve arbitration as a respected alternative dispute resolution forum.' " *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, supra at 362, quoting Shell, The Power to Punish: Authority of Arbitrators to Award Multiple Damages and Attorneys' Fees, 72 Mass. L. Rev. 26, 31 (1987). We agree with the Appeals Court.

We do not foreclose the possibility that some commercial disputes might affect public policy and might require different treatment, but the present case, involving a purely private dispute between two construction businesses, is not such a case. See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, supra at 379; *Greenleaf Eng'g & Constr. Co.* v. *Teradyne, Inc.*, supra at 575-576. In the majority of cases under § 11 that consist of private commercial disputes, there is a "strong public policy in favor of arbitration." *Minton Constr. Corp.* v. *Commonwealth*, supra at 880. Moreover, "the objectives of punitive damages, which include compensating claimants for their legal costs and emotional injuries and punishing and deterring actual and potential wrongdoers . . . generally may be as well served by

---

[4]The multiple damages authorized by § 11 are punitive damages. See *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 856-858 (1983).

arbitrators as by judges and juries" (citation omitted). *Drywall Sys., Inc.* v. *ZVI Constr. Co., supra* at 361.

That arbitration is not a public forum and does not yield published opinions, as argued by ZVI, does not detract significantly from the deterrence of other potential wrongdoers. "In the case of commercial arbitration, however, both traditional and modern electronic methods of information dissemination are likely to bring the news of arbitration awards to other members of the same trade or industry." *Id.* at 361 n.11.

Allowing arbitrators to award the full range of relief under G. L. c. 93A, § 11, encourages arbitration as an alternative means of efficient commercial dispute resolution without the "delay and obstruction in the courts." *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980), quoting *Quirk* v. *Data Terminal Sys., Inc.*, 379 Mass. 762, 767 (1980).[5] Arbitration of multiple damages under § 11 furthers the legislative objective of promoting forthright conduct in commercial dealings, and the clear benefits therefrom outweigh any detractions that may result from conflicts with other policy considerations.

3. *Attorney's fees.* Relying on *Floors, Inc.* v. *B.G. Danis of New England, Inc.*, 380 Mass. 91 (1980), the motion judge concluded that an arbitrator may not award attorney's fees absent the parties' express agreement. In that case the court held that a subcontractor was not entitled to attorney's fees under G. L. c. 149, § 29, the public works payment bond statute, for legal services rendered during arbitration of the underlying contract claim. *Id.* at 95-101. The court reasoned that "[l]egal fees incurred while arbitrating [the underlying dispute] are simply not the direct result of the right of action created by [G. L.] c. 149, § 29," which mandates an award of legal fees to a subcontractor who recovers judgment in an action on a surety bond. *Id.* at 99-100. The arbitration statute, G. L. c. 251, § 10, which prohibits an award of attorney's fees in the absence of an express agreement, was held to govern arbitration of the contract

---

[5]Parties who prefer to exclude multiple damage claims under G. L. c. 93A, § 11, from arbitration may do so by the terms of their agreement to arbitrate, or they may elect to waive them entirely. See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 377-378 (1990) (contractual provision limiting liability operated as waiver of G. L. c. 93A, § 11, claims).

claim. *Id.* at 97. The court recognized that the Legislature could mandate an award of attorney's fees by statute and thereby override the policy expressed in G. L. c. 251, § 10, but it gleaned no such intent in the language or legislative history of G. L. c. 149, § 29. *Id.* at 97, 101. The *Floors, Inc.*, case construed G. L. c. 251, § 10, in a manner consistent with the "American rule" regarding attorney's fees in civil actions.[6]

General Laws c. 93A, § 11, is a statute that overrides the general unavailability of attorney's fees under G. L. c. 251, § 10, both in its language and in its purpose. It requires an award of attorney's fees on a finding that a claimant has been adversely affected by an unfair or deceptive act or practice. Specifically, G. L. c. 93A, § 11, sixth par., states:

> "If the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action."

Unlike the distinct bond recovery provision under G. L. c. 149, § 29, G. L. c. 93A, § 11, establishes both a cause of action and an award of attorney's fees in the same statute. Chapter 93A is unique in that it mandates an award of attorney's fees to a prevailing party even if quantifiable damages are lacking. See *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 718 (1989) (claimant may recover attorney's fees under § 11 if claimant establishes unfair or deceptive conduct "had some adverse effect . . . even if it is not quantifiable in dollars"); *Raymer* v. *Bay State Nat'l Bank*, 384 Mass. 310, 319-320 (1981) (§ 11 explicitly requires attorney's fees where they would otherwise be "anomalous"). Provision for attorney's fees under G. L. c. 93A reflects "the Legislature's manifest purpose of deterring misconduct by affording both private and public plaintiffs who succeed in proving violations of G. L. c. 93A, § 2 (*a*), reimbursement for their legal services and costs." *Com-*

---

[6]Under the "American rule," attorney's fees may not be recovered absent an agreement or statute to the contrary. See *Police Comm'r of Boston* v. *Gows*, 429 Mass. 14, 17 (1999).

*monwealth* v. *Fall River Motor Sales, Inc.*, 409 Mass. 302, 316 (1991).

We conclude that the directive that a prevailing party be awarded attorney's fees under G. L. c. 93A, § 11, applies to arbitration awards of claims under § 11 despite the normal unavailability of attorney's fees in arbitration. The award of attorney's fees is required by § 11, and therefore overrides the effect of G. L. c. 251, § 10. Cf. *Floors, Inc.* v. *B.G. Danis of New England, Inc.*, *supra* at 101. We acknowledge that attorney's fees for claims pursued in arbitration in conjunction with G. L. c. 93A claims are not recoverable under G. L. c. 251, § 10, if they can be apportioned accordingly. General Laws c. 93A, § 11, sixth par., authorizes the award of attorney's fees "incurred in connection with said action" (i.e., the G. L. c. 93A action), but not for other actions. See *Miller* v. *Risk Mgt. Found. of the Harvard Med. Insts.*, 36 Mass. App. Ct. 411, 421 (1994) (interpreting same language under c. 93A, § 9 [4]). Where claims "represent various elements of damage arising from a single chain of events," however, the attorney's fees need not be limited to G. L. c. 93A claims. *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 106 (1983), quoting *Simon* v. *Solomon*, 385 Mass. 91, 112 (1982). It is apparent from the arbitration panel's decision that the same events underlying the arbitration panel's conclusion that ZVI violated its contracts with Drywall governed its determination that ZVI violated G. L. c. 93A, §§ 2 and 11. As such, we need not remand the case for an apportionment of legal fees incurred in pursuit of Drywall's G. L. c. 93A claims.

4. *Other claims.* ZVI claims that the arbitration panel exceeded its authority when it (1) denied its motion to compel Drywall to deliver certain lien waivers, (2) refused to hear relevant evidence, and (3) found that ZVI's unfair or deceptive acts or practices occurred primarily and substantially in Massachusetts. Under G. L. c. 150C, § 11 (*a*), a judge's review of an arbitration award is limited.[7] See *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392

---

[7]The relevant provisions of G. L. c. 150C, § 11 (*a*), provide that an arbitration award shall, on application of a party, be vacated in the Superior Court if:

Mass. 184, 187 (1984). "We do not, and cannot, pass on an arbitrator's alleged errors of law and, absent fraud, we have no business overruling an arbitrator because we give a contract a different interpretation." *Id.* See *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). None of the points raised by ZVI warrants overruling the arbitration panel.

Accordingly, we reverse the motion judge's vacation of attorney's fees and order that the judgment of the Superior Court be modified to confirm the arbitration award in its entirety. Drywall may request appellate legal fees and costs in a motion for fees and costs, supported by affidavit, filed in the county court within fifteen days after the issuance of the rescript. See *Yorke Mgt.* v. *Castro*, 406 Mass. 17, 20 (1989).

*So ordered.*

---

"(1) the award was procured by corruption, fraud or other undue means; (2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party; (3) the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law; (4) the arbitrators . . . refused to hear evidence material to the controversy . . . as to prejudice substantially the rights of a party."