Murphy, J.
The Plaintiff, Joseph Mongeon [“Mongeon”], brought this action to enforce an agreement to arbitrate disputed amounts of damages with respect to claims arising under an automobile insurance policy entered into by Mongeon and the defendant, Arbella Mutual Insurance Company (“Arbella”]. Mongeon’s complaint also alleges unfair and deceptive practices by Arbella in connection with those claims. This matter is before the Court on Arbella’s Petition for Declaratory Judgment, which asks this Court to declare that Mongeon’s claim as to count one of the complaint, which demands the dispute be arbitrated, is moot because Arbella defendant has tendered the policy limit ($100,000).
Arbella’s petition may also be considered as a Motion for Partial Summary Judgment because the declaration it seeks, if granted, would effectively bar that portion of the complaint that demands arbitration. For the reasons stated below, the defendant’s petition is DENIED.

BACKGROUND

On October 6, 2000, Mongeon was involved in an automobile accident in which he sustained substantial injuries. The other driver was an uninsured motorist. At the time of the accident, Mongeon maintained a Massachusetts Automobile Policy of Insurance with Arbella. The policy included a $100,000 limit for uninsured motorist coverage. On November 3, 2000, Mongeon made a demand of Arbella for the policy limit. While the “limit” demand may have been arguably excessive, it was clear that Arbella was subject to substantial liability on the claim. Notwithstanding, Arbella made no offer to settle until a full year later, on October 30, 2001.
On May 3, 2002, the plaintiff filed suit in this court, demanding arbitration pursuant to c. 251, and seeking damages for the defendant’s alleged violations of G.L.c. 93Aand c. 176D.
Arbitration for this matter was scheduled for November 6, 2002. On November 4, 2002, Arbella offered the policy limit of $ 100,000, tendering a check for that amount to Mongeon’s counsel. Mongeon informed Arbella that he wished to proceed with arbitration. Arbella subsequently filed this Petition seeking to quash the arbitration referenced in Count One of Mongeon’s complaint.

DISCUSSION

The purpose of a declaratory judgment action is “to provide a plaintiff relief from uncertainty and insecurity with respect to rights, duties, status, and other legal relations.” Sahli v. Bull HN Information Systems, Inc., 437 Mass. 696, 705 (2002). The declaratory judgment statute “was intended to expand, at least in the discretion of the court, prior provisions for interpretation of written instruments.” Billings v. Fowler, 361 Mass. 230, 234 (1972). “One of the benefits of the declaratory procedure is that it does not require one to incur the risk of violating some term of a contract or of invading some right of the other, even if done in good faith, before he may have relief.” Sahli, 437 Mass. at 705, quoting School Comm. of Cambridge v. Superintendent of Schs. of Cambridge, 320 Mass. 516, 518 (1946). Also, a final decree should determine the whole controversy between the parties and should leave for future determination no issue reasonably raised by the bill and prayers for relief. See Vesce v. Gottfried, 353 Mass. 568, 569 (1968) (further citations omitted).
The question “whether an agreement creates a duty to arbitrate is ‘undeniably an issue for judicial determination . . . [u]nless the parties clearly and unmistakably provide otherwise.’ ” Local No. 1710, Int'l Ass’n of Fire Fighters v. Chicopee, 430 Mass. 417, 421 (1999), quoting AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 649 (1986).
Arbella contends that its obligation to submit to arbitration has been extinguished by its tendering of $100,000, the limit of coverage afforded under the uninsured motorist provision of the policy in question. The argument, simply stated, reasons that, because the highest limit of coverage under the policy is $100,000, and since it has tendered that amount, there no longer is a need to proceed with arbitration, mooting the case. For several reasons, the Court disagrees.
First, as the parties have already submitted their dispute to an arbitrator, once that matter has been submitted, courts generally decline to allow one parly unilaterally to withdraw from that chosen forum. The courts of the Commonwealth have given great deference to the authority of arbitrators. See Plymouth-Carver Reg’l Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990) (“A matter submitted to arbitration is subject to a very narrow scope of review”). If there is room for doubt or interpretation on the question, then the issue properly lies within the broad authority conferred upon arbitrators of civil disputes. Softkey, Inc. v. Useful Software, Inc., 52 Mass.App.Ct. 837, 839-40 (2001), quoting Grobet File Co. of America, Inc. v. RTC Sys., Inc., 26 Mass.App.Ct. 132, 134-35 (1988).
An arbitrator’s decision is subject to reversal for exceeding the scope of the agreement only if there is no room for doubt or interpretation of that agreement. See Softkey, 52 Mass.App.Ct. at 839-40. “Even a grossly erroneous decision is binding in the absence of fraud.” Trustees of Boston Maine Corp. v. Massachusetts Bay Transp. Auth., 363 Mass. 386, 390 (1973).
This is not a situation where the parties were not afforded an opportunity to settle their disputes without *621 judicial intervention. If Arbella wanted to settle its dispute by tendering the full policy limit, it could have done so within the approximately one and one half year time period between Mongeon’s filing of his claims with Arbella and the filing of his current action in this Court.
However, after failing to come to an agreement, Arbella now asks this court to reverse the very course of action that it voluntarily initiated. Both parties selected the arbitrator, and the arbitrator has ordered that Arbella appear. This court sees no basis upon which to interfere with the ongoing arbitration process.
Second, the Court is convinced that the parties have a clear and explicit agreement to arbitrate all claims, which includes claims arising under G.L.c. 93A and G.L.c. 176D; the court is unwilling to stay such proceedings in the absence of a definitive showing (not found on this record) that the agreement to arbitrate is not susceptible of interpretation which covers the “93A” and “176D” disputes. See Drywall Systems, Inc. v. ZVI Construction Co., Inc., 435 Mass. 664, 666-67 (2002).
In Drywall the Supreme Judicial Court (“SJC”) reiterated that absent explicit agreements to the contrary, the courts will presume that agreements to arbitrate have contemplated the inclusion of G.L.c. 93A and G.L.c. 176D claims: “[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that ‘ [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage .. .’” Id. at 666 (citations omitted).
The relevant parts of the contract between the parties state: “The most we will pay for damages to or for anyone injured in the following situations is . . . per accident or the limits you purchased, whichever is less .. .” Arbella argues that this clause precludes the possibility of a higher award, even if based on unfair commercial practices. The Court disagrees. If eveiy defendant were able to successfully claim that a general limitation clause of an insurance policy agreement precludes the possibility of multiple damages, then c. 93A and c. 176D remedies would be rendered ephemeral.
The defendant’s additional reliance on the section of the policy entitled “Our Duty to Defend You and Our Right to Settle” is disingenuous at best. The language states: “We may end our duty to defend at any time during the course of the lawsuit, by tendering, or paying the maximum limits of coverage under the policy, without need for a judgment or settlement of the lawsuit or a release by the claimant.” The Court is of the opinion that this section, when read in the context of the whole agreement, appropriately means that Arbella’s duty to defend Mongeon in actions against him by third parties may be extinguished by Arbella’s timely payment of the maximum limits of the coverage under the policy, and not that Arbella may unilaterally breach an agreement to arbitrate disputes that may arise from a failure of timely payment.
Also, the c. 93A and c. 176D claims in the present case constitute “ ‘private matter[s]’ which ‘[do] not significantly involve public interest factors,’ ” and serve only to bolster the private claims that have arisen out of a contract between the parties. Greanleaf Eng’g & Constr. Co. v. Teradyne, Inc., 15 Mass.App.Ct. 571, 576 (1983). Because Mongeon’s claims as spelled out in his complaint do not suggest that he seeks to “vindicate any aspect of strong public policy,” there is no public policy rationale for holding that the matter cannot be referred to arbitration. Id. Thus, although the limits of the policy may be $100,000, the court concludes that there is still an unresolved dispute concerning actual damages suffered by Mongeon as a result of Arbella’s failure to make a reasonable tender within a reasonable time period after being apprised of all relevant information regarding the loss.
In the present case, Mongeon does not contest that the reason he seeks to proceed to arbitration is to chart the course set by the holding in Metropolitan Property and Casualty Insurance Co. v. Choukas, 47 Mass.App.Ct. 196, 202 (1999). That case stands for the proposition that an arbitrator’s award subsequently reduced to a judgment by the court, is considered a judgment for the purposes of predicating a “c. 93A” award. The ruling in Choukas distinguished that plaintiffs case from Bonofiglio v. Commercial Union Ins. Co., 411 Mass. 31, 37 (1991). See Choukas, 47 Mass.App.Ct. at 202. In Bonofiglio, the SJC drew a distinction between an arbitrator’s award and a judgment under Mass.R.Civ.P. 54(a) and interpreted G.L.c. 93A, §9, to apply only to the latter. See Bonofiglio, 411 Mass. at 38.
This distinction has been widely misinterpreted by trial judges and practitioners to mean that the multiplying provision of c. 93A was not applicable to arbitration awards because the awards are not “judgments” within the meaning of the statute. Such an interpretation has proven wrong, said the SJC clarified any confusion in the recent Drywall decision. See "435 Mass. at 668. “The central holding in . . . [Bonofiglio] was that, where multiple damages are sought under G.L.c. 93A based on ‘claims arising out of the same and underlying transaction,’ those claims must be determined in the same proceeding with the multiple damages claims.” Drywall 435 Mass. at 668.
The simple reason the SJC drew its Bonofiglio distinction, is that, in that case, as the plaintiff sought no more than the interest he lost on the amount of the recovery the arbitrator awarded, there was no basis for allowance of his post-trial motion to multiply the recovery the arbitrator awarded. See Bonofiglio, 411 Mass. at 37-38.[1]
The Court finds no reason why the plaintiff should not be allowed to proceed to arbitration, even if the main purpose for doing so is to eventually obtain a judicial confirmation of the arbitrator’s award. See Choukas, 47 Mass.App.Ct. at 202. Absent contrary *622 statutory direction, the strong public policy in favor of arbitration of disputes should be given effect. See Drywall, 435 Mass. at 669-70. “In addition, absent a statutory prohibition, an arbitrator generally has the same powers as a court to award multiple damages.” Drywall, 435 Mass. at 669.
While it is perhaps true that Mongeon may accept the proposed settlement amount of $100,000 and separately prosecute its statutory claims, the court agrees with Mongeon that continuation of the submission of the whole matter to an arbitrator will best serve the interests of judicial economy. See Goodman, 12 Mass. L. Rptr. 145, 2000 WL 1257462 at *5-8 (pursuing G.L.c. 93A and c. 176D claims after an arbitration award is acceptable strategy; even an acceptance of full payment of an award does not render the controversy moot).
Lastly, to credit Arbella’s position would mean that an injured motorist, frustrated by an alleged unwillingness to make a good faith offer of settlement when liability is reasonably clear, who then attempts to enforce an agreement to arbitrate, would be denied the protections of that agreement by an insurance company’s decision to pay out the limits of the coverage subsequent to an issuance of an order to arbitrate, merely to avoid the possibility of having multiple damages awarded against it for the veiy alleged stalling techniques that led to the arbitration order in the first place. The Court declines to enter “Catch 22" as an element of Massachusetts jurisprudence.

ORDER

For the foregoing reasons, it is hereby ORDERED that defendant’s petition be DENIED. The plaintiff and the defendant shall obey the directives of the arbitrator in the scheduling of the arbitration, which may, in his discretion, include the consideration of statutory claims aimed at a multiple damages award for deceptive and unfair settlement practices, including such of those as may arise under G.L.c. 93A, and G.L.c. 176D.

For detailed explanation of Bonofiglio, see Goodman v. Seaver, 12 Mass. L. Rptr. 145, 2000 WL 1257462 (Mass. Super. Ct. 2000) (confirming an arbitrator’s award of multiple damages, disavowing Hanna v. Berkshire Mutual Insurance Co., No. 92-5082 (Mass. Super. Ct. April 21, 1993) (Flannery, J.) (the Hanna decision, relied on by the defendant in its oral argument before this court, was based on a misinterpretation of Bonofiglio, and preceded Dry wall)).