M. O'CONNOR CONTRACTING, INC. *vs.* CITY OF BROCKTON.

No. 02-P-1017.

Plymouth. October 15, 2003. - June 7, 2004.

Present: GELINAS, McHUGH, & COHEN, JJ.

*Contract,* Municipality, Construction contract, Arbitration. *Arbitration,* Appeal of order compelling arbitration, Authority of arbitrator, Damages, Consumer Protection Act. *Municipal Corporations,* Contracts. *Consumer Protection Act,* Arbitration, Damages. *Damages,* Consumer protection case. *Governmental Immunity. Public Policy.*

In a civil action to confirm an arbitrator's ruling that the defendant city should pay the plaintiff contractor double damages for the city's unfair and purposely deceptive failure to meet its obligations under a construction contract, in violation of G. L. c. 93A, the judge correctly concluded that the arbitration agreement contained in the contract authorized arbitration of a G. L. c. 93A claim [281-283], but this court vacated the award as beyond the arbitrator's authority because it was contrary to principles of sovereign immunity and, hence, against public policy [283-286].

CIVIL ACTION commenced in the Superior Court Department on October 5, 2001.

A motion to confirm an arbitration award and motions to reconsider an order compelling arbitration and to vacate the arbitration award were heard by *Charles J. Hely,* J.

*Charles A. Plunkett* for the plaintiff.

*Mark Adams* for the defendant.

COHEN, J. At issue in this appeal is whether the city of Brockton must pay an award of double damages under G. L. c. 93A in a construction contract case that was decided, over the city's objection, by an arbitrator. Although we reject the city's contention that the arbitration agreement cannot be read to authorize arbitration of a c. 93A claim, we nevertheless conclude that the award must be vacated as beyond the arbitrator's authority because it is contrary to principles of sovereign immunity and, hence, against public policy.

*Background.* Undertaking to build a new municipal building to house its council on aging,[1] the city entered into a written construction contract with the plaintiff, M. O'Connor Contracting, Inc., whereby the plaintiff would receive $1,344,500 for its work on the project. The contract included the following "Supplementary General Condition" relating to arbitration:

> "U. *Damages*
>
> Should either party to the Contract suffer damages because of any wrongful act or neglect of the other party . . . claim shall be made in writing to the party liable within a reasonable time of the first observance of such damage and no later than the final payment . . . and shall be adjusted by agreement or arbitration."

Another Supplementary General Condition, paragraph Q, provided that such claims would be heard by the American Arbitration Association.

As the project neared completion, a dispute arose between the parties. The plaintiff claimed that it was owed a balance of $101,685.95 for work performed under the contract. The city refused to pay, citing deficiencies in the work. Viewing the city's refusal to pay as unjustified and, hence, giving rise to a "claim" for "damages because of any wrongful act" within the meaning of the above arbitration clause, the plaintiff filed a demand for arbitration with the American Arbitration Association. After preliminary skirmishes before the arbitrator as to whether arbitration was the appropriate forum for the dispute,[2] the city refused to participate. On October 5, 2001, the plaintiff therefore went to court, pursuant to G. L. c. 251, § 2(*a*),

---

[1] It is undisputed that the council on aging was created by city ordinance, under the authority of G. L. c. 40, § 8B, "for the purpose of coordinating or carrying out programs designed to meet the problems of the aging in coordination with programs of the department of elder affairs." Revised Ordinances, § 2-413 (1984) of the city of Brockton.

[2] The city claimed that the Supplementary General Conditions containing the arbitration provisions were superseded by other contractual provisions; that, in any event, termination of the contract was an unmet precondition to arbitration; and that the question of arbitrability was not within the jurisdiction of the arbitrator. The arbitrator issued a ruling that the Supplementary General Conditions were applicable and that the arbitration was to go forward.

and moved to compel arbitration of (1) its claim for the balance allegedly owed under the contract, and (2) a claim for double or treble damages under G. L. c. 93A.

In response, the city opposed the arbitration generally, contending that the parties had not agreed to arbitrate any aspect of the controversy. It also requested that, at a minimum, the court strike the plaintiff's c. 93A claim.[3] A judge of the Superior Court rejected the city's position, concluding that the arbitration clause was broad enough to include a claim for payments improperly withheld. He did not distinguish between the breach of contract and c. 93A claims and allowed the plaintiff's motion to compel arbitration as to both.

The arbitration proceeded (over the city's protest) with the following results: the arbitrator issued an award on December 14, 2001, in favor of the plaintiff on the contract claim, which, with interest, amounted to $107,479.35; then, finding that the city "chose to ignore its obligations established under the terms of the contract" and that its "actions during the subsequent period regarding payments . . . and . . . concerning this Arbitration process" were "unfair and purposely deceptive," the arbitrator also rendered an award of double damages on the plaintiff's c. 93A claim. Although the award was fairly detailed in other respects (it was six pages in length), it did not address the legal sufficiency of the c. 93A claim and contained no discussion of whether the transaction arose from the city's engagement in trade or commerce.

After the arbitration was concluded, the parties returned to the Superior Court. The plaintiff moved, pursuant to G. L. c. 251, § 11, to confirm the arbitration award and, for the first time, requested an award of costs and attorney's fees in conjunction with its c. 93A claim. The city countered with a motion, pursuant to G. L. c. 251, § 12, to reconsider the court order compelling arbitration and to vacate the award.[4] A judge differ-

---

[3]The record on appeal does not disclose the arguments made by the city in support of its request to strike the c. 93A claim.

[4]In addition to contending that the arbitrator exceeded his authority by issuing the c. 93A award, see G. L. c. 251, § 12(*a*)(3), the city also contended that the arbitrator lacked impartiality, see G. L. c. 251, § 12(*a*)(2), and wrongfully refused to hear evidence material to the controversy, see G. L. c. 251,

ent from the one who allowed the plaintiff's motion to compel arbitration denied the city's motion and confirmed the award in its entirety.

The judge rejected the city's contention that the arbitrator lacked the authority to consider and award relief on the c. 93A claim, concluding that the issue was governed by *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 666-671 (2002), which held that a statutory claim under G. L. c. 93A, § 11, including a claim for multiple damages, was within the scope of a broadly worded arbitration clause agreed to by two private construction businesses. The judge then observed that while "[t]he court might venture to agree that the city was not engaged in trade or commerce and thus not subject to G. L. c. 93A liability," he was constrained to leave the results of the arbitration undisturbed because even a grossly erroneous arbitration decision is binding in the absence of fraud.

*Discussion.* The city takes the position that the arbitration clause cannot be read as an agreement to arbitrate the plaintiff's c. 93A claim and that it therefore was error for the first judge to order that the c. 93A claim be submitted to arbitration, and for the second judge to refuse to vacate the double damages award as exceeding the arbitrator's authority. The city's rationale, briefly stated, is that the parties' agreement requires that, to be arbitrable, the plaintiff's claim must be one for damages because of a "wrongful act"[5]; that this language can only refer to a grievance that is capable of legal redress; and that, given the public motivation for the project, the plaintiff's c. 93A claim against the city was not legally cognizable,[6] and hence not arbitrable. In effect, the city invites us to consider the legal

§ 12(*a*)(4), and that the award was procured by undue means, see G. L. c. 251, § 12(*a*)(1). For the reasons stated in his memorandum of decision, the Superior Court judge correctly rejected the three latter contentions, and we do not discuss them here.

[5]The plaintiff has never contended that it is entitled to recover c. 93A damages as a result of any "neglect" on the city's part within the meaning of the arbitration clause, as distinct from the city's "wrongful" refusal to pay the balance of the contract price.

[6]In this regard, the city relies upon a line of appellate cases deciding that, whether or not governmental entities are completely insulated from liability under G. L. c. 93A, at a minimum, they are not subject to liability when they do not act in a business context. See *United States Leasing Corp.* v. *Chicopee,*

merits of the plaintiff's c. 93A claim and to conclude that, because it fails to state a valid cause of action on the facts of this case, the parties could not have intended to arbitrate it. This we cannot do.

"[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage . . . .' " *Local No. 1710, Intl. Assn. of Fire Fighters, AFL-CIO* v. *Chicopee*, 430 Mass. 417, 421 (1999), quoting from *AT&T Technologies, Inc.* v. *Communications Wkrs. of Am.*, 475 U.S. 643, 649 (1986). Although the clause in question is not the standard, broad clause that was at issue in *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. at 665,[7] it does not, by its terms, exclude c. 93A claims; nor does the arbitration clause, or any other part of the contract, place descriptive limits upon the matters that may be arbitrated. Compare *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 87 n.2 (1977) (under terms of arbitration agreement in automobile insurance policy, factual questions concerning insured's rights against owner and operator of uninsured vehicle were for arbitrator to decide, but scope and meaning of policy was for court); *School Comm. of Hanover* v. *Hanover Teachers Assn.*, 435 Mass. 736, 740-742 (2002) (where collective bargaining agreement contained limiting language excluding school nurses from coverage, arbitration clause did not confer authority upon arbitrator to consider grievance involving nurses). To the contrary, a reasonable reading of the clause is that by agreeing to arbitrate claims for "damages because of any wrongful act" the parties committed themselves

---

402 Mass. 228, 232 (1988); *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston*, 416 Mass. 269, 271 (1993); *Peabody N.E., Inc.* v. *Marshfield*, 426 Mass. 436, 439-440 (1998); *Lafayette Place Assocs.* v. *Boston Redev. Authy.*, 427 Mass. 509, 535-536 (1998), cert. denied, 525 U.S. 1177 (1999); *Boston Hous. Authy.* v. *Howard*, 427 Mass. 537, 538-539 (1998); *Bretton* v. *State Lottery Commn.*, 41 Mass. App. Ct. 736, 737-740 (1996); *Morton* v. *Hanover*, 43 Mass. App. Ct. 197, 205-206 (1997).

[7]The *Drywall* agreement obliged the parties to arbitrate "[a]ny controversy or claim . . . arising out of or related to [their contract]." *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. at 665.

to arbitrate a wide range of disputes arising from alleged improprieties in the parties' performance of the contract.

The city's argument also runs afoul of the principle that, in deciding whether parties have agreed to submit a particular matter to arbitration, a court is not to rule on the potential merits of the underlying claims. See *Local No. 1710, Intl. Assn. of Fire Fighters, AFL-CIO* v. *Chicopee, supra.* It is for the arbitrator to decide whether or not the claim is supported in law and fact; and, if the arbitrator then proceeds to commit an error of law or fact, but does not overstep the limits of the issues submitted, ordinarily there is no basis for judicial intervention. See *Lawrence* v. *Falzarano*, 380 Mass. 18, 28-29 (1980); *Lynn* v. *Thompson*, 435 Mass. 54, 62 (2001), cert. denied, 534 U.S. 1131 (2002).

That being said, we remain troubled by the arbitrator's decision. The source of our discomfort is that in the circumstances presented the award is not simply factually and legally erroneous. It also conflicts with the doctrine of sovereign immunity — a doctrine that is grounded in public policy concerns that are well-defined, dominant, and readily ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. See *School Dist. of Beverly* v. *Geller*, 435 Mass. 223, 237-238 (2001) (Ireland, J., concurring) (articulating test used in cases arising under G. L. c. 150C, § 11, to determine whether public policy exception applies to arbitration awards issued pursuant to collective bargaining agreements).

Since the enactment of the Massachusetts Tort Claims Act, G. L. c. 258, it has been clear that governmental "immunity is still in effect unless consent to suit has been 'expressed by the terms of a statute, or appears by necessary implication from them.' " *Bain* v. *Springfield*, 424 Mass. 758, 763 (1997), quoting from *C & M Constr. Co.* v. *Commonwealth*, 396 Mass. 390, 392 (1985). See *Morash & Sons, Inc.* v. *Commonwealth*, 363 Mass. 612, 623 (1973) (noting desirability of limits and exceptions to governmental liability, based upon considerations of justice and public policy); *Commonwealth* v. *ELM Med. Labs., Inc.*, 33 Mass. App. Ct. 71, 77-78 (1992) (observing that sovereign immunity is rooted in history and based upon sound

considerations of public policy). Putting aside the broader question whether c. 93A may be read as waiving governmental immunity in *any* circumstances,[8] at a minimum it is well established that governmental entities are not amenable to suit under c. 93A when they have engaged in governmental activity rather than trade or commerce. See cases cited in note 6, *supra.* This limitation on the c. 93A liability of governmental entities stems not only from the explicit language of the statute,[9] it is born of respect for the doctrine of sovereign immunity. See *Bretton* v. *State Lottery Commn.*, 41 Mass. App. Ct. 736, 738 (1996); *Morton* v. *Hanover*, 43 Mass. App. Ct. 197, 205-206 (1997). See also *Broadhurst* v. *Director of the Div. of Employment Security*, 373 Mass. 720, 722 (1977) (noting general principle that Commonwealth cannot be impleaded in its own courts except with its consent and, when that consent is granted, only in manner and to extent expressed by statute).

Here, the facts establish (and the plaintiff does not contest)

---

[8]Whether a governmental entity is ever amenable to suit under c. 93A remains an open issue. See, e.g., *United States Leasing Corp.* v. *Chicopee*, 402 Mass. at 232; *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston*, 416 Mass. at 271; *Peabody N.E., Inc.* v. *Marshfield*, 426 Mass. at 439-440; *Lafayette Place Assocs.* v. *Boston Redev. Authy.*, 427 Mass. at 535-536. The question is controversial because c. 93A contains no explicit indication that governmental entities are to be liable under its provisions. See *Bretton* v. *State Lottery Commn.*, 41 Mass. App. Ct. 736, 738 (1996). Both § 11 and § 9 of c. 93A require that the defendant be a "person" engaged in trade or commerce. "Person" is defined in the statute as including "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity." G. L. c. 93A, § 1(*a*). Although the term "person" ordinarily is not construed as including the State or its political subdivisions, *Bretton* v. *State Lottery Commn.*, *supra*, uncertainty exists because only a "person" may bring suit under c. 93A and governmental entities have been considered to have standing to do so. See *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 615-616 (1983); *Boston* v. *Aetna Life Ins. Co.*, 399 Mass. 569, 574-575 (1987). See also *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978) (words used in one place within statute are to be given same meaning when found in other places in that statute).

[9]General Laws c. 93A, § 2, declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices *in the conduct of any trade or commerce*" (emphasis added). General Laws c. 93A, § 11, authorizes suit by "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment *by another person who engages in any trade or commerce* of an unfair method of competition or an unfair or deceptive act or practice" (emphasis added).

that the c. 93A claim against the city arose from its performance of a governmental function, i.e., contracting for the construction of a municipal building to be used solely for municipal purposes.[10] Thus, the erroneous application of c. 93A to the city contravened not only the statute itself, but also fundamental principles of governmental immunity. Compounding our public policy concerns, the award was one for punitive damages[11] — a form of relief particularly disfavored when assessed against a public entity. See *Newport* v. *Fact Concerts, Inc.*, 453 U.S. 247, 259-271 (1981) (recounting history of municipal immunity from punitive damages and concluding, in view of considerations of history and general principles of public policy, that municipalities are not liable for punitive damages under 42 U.S.C. § 1983).[12]

This, then, is one of those rare cases where an arbitration award must be vacated on the ground that it offends public policy.[13] Cf. *Lawrence* v. *Falzarano*, 380 Mass. at 28. We are cognizant that "because the public policy 'doctrine allows courts to by-pass the normal heavy deference accorded to arbitration awards and potentially to "judicialize" the arbitration process, the judiciary must be cautious about overruling an arbitration award on the ground that it conflicts with public policy.' " *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 604 (2000), quoting from *E.I. DuPont de Nemours & Co.* v. *Grasselli Employees Indep. Assn. of E. Chicago*, 790 F.2d 611, 615 (7th Cir.), cert. denied, 479 U.S. 853 (1986). We also are cognizant that, in *Drywall Sys., Inc.* v. *ZVI Constr.*

---

[10]Although the record before us is sparse, the briefs and the positions taken by the parties at oral argument, as well as the award-confirming judge's comments, demonstrate agreement on this basic fact.

[11]The multiple damages authorized by c. 93A are punitive damages. *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. at 670 n.4.

[12]Punitive damages, by definition, are not intended to compensate the injured party, but rather to punish and deter the wrongdoer; yet an award of punitive damages against a municipality punishes only the taxpayers, who took no part in the wrongful conduct, but who nevertheless may incur an increase in taxes or a reduction in public services as a result of the award. See *Newport* v. *Fact Concerts, Inc.*, 453 U.S. at 266-267.

[13]An arbitrator's award that violates public policy is subject to vacation as exceeding the arbitrator's authority. See *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Municipal Employees, Council 93*, 420 Mass. 13, 16 (1995), citing G. L. c. 150C, § 11(*a*)(3). Compare G. L. c. 251, § 12(*a*)(3).

*Co.,* 435 Mass. at 670, the Supreme Judicial Court rejected the defendant's wholesale contention that arbitration awards of multiple damages under c. 93A violate public policy.[14] Essential to the court's decision, however, was that *Drywall* involved a purely private dispute between two construction businesses. The court did "not foreclose the possibility that some commercial disputes might affect public policy and might require different treatment." *Ibid.* We think that an award of double damages against a municipality in contravention of well-established principles of sovereign immunity does, in fact, affect public policy and require different treatment.

*Conclusion.* For the reasons stated, we vacate the judgment confirming the arbitration award and direct that a new judgment enter confirming the award only to the extent that it grants relief on the plaintiff's claim for breach of contract.[15]

*So ordered.*

---

[14]Since the commercial defendant in *Drywall* had no basis to assert any immunity from liability for punitive damages, its argument was that punitive damages should only be imposed by a court, in a public forum.

[15]In view of our decision, we need not consider the plaintiff's cross appeal seeking to augment the c. 93A award obtained at arbitration with an additional award of attorney's fees that it did not request of the arbitrator.