NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-234

ALBERT WOSZCZYNA & another[1]

vs.

AMERIPRISE FINANCIAL SERVICES LLC & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2023, Albert and Donna Woszczyna (plaintiffs) submitted to the American Arbitration Association (AAA) their dispute over the alleged failure by Ameriprise Financial Services LLC (Ameriprise) to pay for several monthly life insurance premiums for a policy the plaintiffs purchased in 2014.  In their complaint to the AAA, the plaintiffs did not disclose the existence of a 2018 arbitration agreement with Ameriprise to arbitrate disputes with the Financial Industry Regulatory Authority, Inc. (FINRA).  Prior to Ameriprise's answer, the AAA

_____

[1] Donna Woszczyna.

[2] American Enterprise Investment Services, Inc., and Daryl DeVillier.

declined to administer the dispute because of Ameriprise's failure to follow the AAA's administrative procedures.  As a result, the plaintiffs filed a complaint in Superior Court asserting a variety of allegations.  Thereafter, Ameriprise filed a motion to dismiss the complaint and to compel arbitration, which a Superior Court judge allowed, and from which the plaintiffs appeal.  We affirm.[3]

Discussion.  "We review the decision on the motion to compel arbitration de novo."  Feeney v. Dell Inc., 454 Mass.

_____

[3] Ameriprise claims that we do not, and the Superior Court did not, have jurisdiction over this case.  In support, it relies on 9 U.S.C. § 16(b)(2) (prohibiting appeals from interlocutory orders "directing arbitration to proceed under section 4 of this title").  Given our resolution of the appeal, we need not resolve this question.  With that said, arbitration in the Commonwealth is controlled by G. L. c. 251, §§ 1 et seq. In fact, the Superior Court has exclusive subject matter jurisdiction over actions relating to the enforcement of arbitration agreements.  Karbowski v. Bradgate Assocs., Inc., 25 Mass. App. Ct. 526, 528-529 (1988).  See G. L. c. 251, § 2 ("A party aggrieved by the failure or refusal of another to proceed to arbitration under an agreement described in section one may apply to the superior court for an order directing the parties to proceed to arbitration"); G. L. c. 251, § 16 (conferring jurisdiction on courts to enforce arbitration agreements).  In any event, the allowance of a motion to dismiss is a final order, not an interlocutory order.  Ameriprise also claims that Smith v. Spizzirri, 601 U.S. 472, 476-478 (2024), which requires a Federal District Court to stay and not dismiss a lawsuit involving an arbitrable dispute, is dispositive.  Even to the extent we interpret chapter 251 as the Federal Arbitration Act has been interpreted, Smith is inapposite because Ameriprise did not request a stay.  See Smith, supra at 475.  See also Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 86–87 (2000) (District Court order to proceed to arbitration, and dismissal of all claims before it, constitutes appealable final order).

2

192, 199 (2009).  The Massachusetts Arbitration Act, G. L. c. 251, §§ 1 et seq., "expresses a strong public policy favoring arbitration" (citation omitted).  Miller v. Cotter, 448 Mass. 671, 676 (2007).  The party seeking to enforce an arbitration provision bears the burden of proving that the parties entered into an agreement to arbitrate disputes.  Kauders v. Uber Techs., Inc., 486 Mass. 557, 572 (2021).

In 2018, the plaintiffs opened a "Brokerage Account" at Ameriprise and entered into the "Ameriprise Brokerage Client Agreement" (Brokerage Account agreement).  In the 2018 agreement, the plaintiffs

> "acknowledge that, in accordance with this Arbitration section, you agree in advance to arbitrate any controversies that may arise with [Ameriprise] or [American Enterprise Investment Services, Inc. (AEIS)].  You agree that all controversies that arise between us (including but not limited to those related to your brokerage account and any service or advice provided by a broker or representative), whether arising before, on or after the date you opened your Account shall be determined by arbitration in accordance with the terms of this Agreement and the rules then prevailing of [FINRA].  Any arbitration pursuant to this provision shall be conducted only before [FINRA]."

In August 2020, the plaintiffs opened an investment advisory account at Ameriprise, which the parties refer to as the "Select Account."  This account was funded with a portion of

3

the proceeds from the Brokerage Account.[4]  The Select Account was governed by the "Ameriprise Custom Advisory Relationship Agreement" (Select Account agreement), which required any controversy or claim arising out of the account to be resolved by arbitration with the AAA.  The Select Account agreement contained no specific language that superseded what the parties had agreed to in the prior Brokerage Account agreement.

The plaintiffs rely on a variety of published and unpublished Federal Circuit and District Court decisions that permit parties to bring a court action when an arbitration entity refuses to arbitrate the matter.  However, none of these cases -- like the instant case -- involved two arbitration agreements for different arbitral fora.  Importantly, the Select Account agreement requiring the use of the AAA was restricted to claims "arising out of the investment advisory services offered or delivered pursuant to this Agreement."  However, the Brokerage Account agreement requiring the use of FINRA was very broad, and it was not restricted to disputes arising under the Brokerage Account.  Rather, the parties agreed to "arbitrate <u>any</u> controversies that may arise with [Ameriprise] or AEIS" (emphasis added).  Moreover, the Select Account did not exist at

---

[4] The plaintiffs transferred approximately $500,000 from the Brokerage Account to the Select Account, resulting in a near equal amount of funds in each account.

the time of three of the four alleged missed payments and the insurance policy could not be deemed an "investment advisory service" covered by the Select Account agreement.

Finally, the motion judge was aware of the two agreements, and concluded it was "clear" that the plaintiffs "agreed to arbitration . . . . before the AAA [regarding the Select Account] as well as with FINRA with regard to the [Brokerage] [A]ccount."  In light of the broad FINRA arbitration language in the Brokerage Account agreement, public policy, and a presumption favoring arbitration, see Drywall Sys., Inc. v. ZVI Constr. Co., 435 Mass. 664, 666 (2002), the motion to dismiss and to compel arbitration was properly allowed.[5]

Judgment affirmed.

By the Court (Meade, Walsh & Smyth, JJ.[6]),

Clerk

Entered:  December 5, 2024.

---

[5] Although the motion judge's margin order allowing the motion to dismiss and to compel arbitration referenced "paragraph 29 . . . [of the] Custom Advisory Relationship Agreement," i.e., the Select Account Agreement requiring the use of the AAA, this appears to be a scrivener's error as neither party requested to return to the AAA.

[6] The panelists are listed in order of seniority.

5